Ash Park, LLC, A Wisconsin Limited Liability
Company, Plaintiff-Respondent,

v.

Alexander & Bishop, Ltd., A Wisconsin
Corporation, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP1735. Oral argument February 23, 2010.
—Decided June 3, 2010.*

2010 WI 44

(Also reported in 783 N.W.2d 294.)

703

704

For the defendant-appellant-petitioner there were briefs by *Valerie Bailey-Rihn, Jeffrey O. Davis, Freya K. Bowen, and Quarles & Brady LLP,* Madison, and oral argument by *Jeffrey O. Davis.*

For the plaintiff-respondent there was a brief by *R. George Burnett, Patrick M. Blaney, and Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay, and oral argument by *R. George Burnett.*

An amicus curiae brief was filed by *Thomas D. Larson and the Wisconsin REALTORS® Association,* Madison, on behalf of the Wisconsin REALTORS® Association.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Alexander & Bishop, Ltd., seeks review of a published decision of the court of appeals affirming the orders of the circuit court.[1] After Alexander & Bishop breached a contract to purchase a parcel of real estate from Ash Park, LLC, the circuit court granted summary judgment in favor of Ash Park and ordered specific performance of the contract. It also imposed interest on the purchase price.

¶ 2. Alexander & Bishop asserts that the circuit court erroneously exercised its discretion under existing law by ordering specific performance without requiring Ash Park to demonstrate that a legal remedy would be inadequate and by failing to inquire whether performance of the contract would be possible. In the alternative, Alexander & Bishop asks us to change Wisconsin law in one of three ways. First, it contends

---

[1] *Ash Park, LLC v. Alexander & Bishop, Ltd.,* 2009 WI App 71, 317 Wis. 2d 772, 767 N.W.2d 614, affirming orders of the circuit court for Brown County, William M. Atkinson, J.

that a seller of real estate should be required to demonstrate that a legal remedy would be inadequate as a prerequisite to an award of specific performance. Second, it argues that ordering a judicial sale of the property and a money judgment for the deficiency should be a mandatory procedure to effectuate an award of specific performance. Third, it asks us to require mitigation of damages when a seller asks for legal interest in addition to the equitable remedy of specific performance.

¶ 3. Finally, Alexander & Bishop asserts that the circuit court erroneously exercised its discretion by imposing interest on the purchase price.

¶ 4. We conclude that the circuit court did not erroneously exercise its discretion when it ordered specific performance of this contract. The contract provides that specific performance is an available remedy, and neither the contract nor Wisconsin law requires Ash Park to demonstrate that a legal remedy would be inadequate as a precondition to relief. Further, although impossibility is a defense to specific performance, Alexander & Bishop failed to present evidence that performance would be impossible in the proceedings before the circuit court.

¶ 5. Additionally, we decline to alter longstanding Wisconsin law by imposing a requirement that a seller of real estate demonstrate the inadequacy of legal damages as a prerequisite to an order for specific performance. Although a judicial sale and deficiency judgment may be a means of effectuating an award of specific performance, we conclude that this procedure is not mandatory. Rather, it depends on the facts and equities of the case. Because a duty to mitigate is contrary to an award of specific performance and would pose practical difficulties for the non-breaching seller,

we decline to require mitigation when a seller asks for interest in addition to specific performance.[2]

¶ 6. Finally, we conclude that the circuit court did not erroneously exercise its discretion by ordering interest on the purchase price. Accordingly, we affirm the court of appeals and remand to the circuit court for further proceedings.

I

¶ 7. In 2007, Ash Park was the owner of a vacant parcel of real estate that was subject to a mortgage. On April 6, Alexander & Bishop made an offer to purchase the parcel of real estate with the plan of developing it into a multi-tenant retail shopping center.

¶ 8. Ash Park submitted a counter-offer, which incorporated by reference most of the terms of Alexander & Bishop's offer to purchase. It set the purchase price at $6.3 million, with the closing date to take place on or before December 14, 2007. The counter-offer was accepted by Alexander & Bishop and is the contract that forms the basis of this lawsuit.

¶ 9. The parties' contract included a leasing contingency that gave Alexander & Bishop the option to terminate the contract if it was unable to secure an anchor tenant:

> This Offer is contingent upon Buyer negotiating a lease with Buyer's principal tenant . . . with terms and conditions acceptable to Buyer . . . on or before July 20,

---

[2] In the complaint, Ash Park made a claim for consequential damages including its costs of holding the property. The circuit court made no determination regarding the nature and extent of any holding costs. The issue of mitigation of those costs was not addressed by the circuit court and is not presented here.

2007. If Buyer is unable to negotiate such lease by said date, this Offer may be terminated at the option of Buyer and all earnest money shall be returned to Buyer. . . .

Upon timely notice, Alexander & Bishop also had the right to extend the lease contingency period:

[T]he Buyer shall have the right to extend the lease contingency period for two (2) additional periods of two (2) calendar months, i.e. to September 20, 2007 and November 20, 2007, provided Buyer (1) provides written notice to Seller of its intent to exercise such extension prior to the expiration of the lease contingency period and (2) pays to Seller, with its notice of exercise, a non-refundable extension fee . . . of $25,000 for each extension period. The non-refundable extension fee shall be non-refundable but applicable to the purchase price at closing.

The contract specified that all contingencies would be waived if not invoked by July 20, 2007.

¶ 10. The contract also included a default clause, which enumerated remedies in the event of a breach. Among other remedies, the contract explicitly provided for specific performance as a remedy for "material failure to perform any obligations under this Offer":

Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and conditions of this Offer. A material failure to perform any obligation under this Offer is a default which may subject the defaulting party to liability for damages or other legal remedies.

If Buyer defaults, Seller may:

(1) sue for specific performance and request the earnest money as partial payment of the purchase price; or

(2) terminate the Offer and have the option to [pursue liquidated or actual damages.]

If Seller defaults, Buyer may:

(1) sue for specific performance; or

(2) terminate the Offer and request the return of the earnest money, sue for actual damages, or both.

In addition, the Parties may seek any other remedies available in law or equity.

The Parties understand that the availability of any judicial remedy will depend upon the circumstances of the situation and the discretion of the courts. . . .

¶ 11. Alexander & Bishop had not secured an anchor tenant by July 20, 2007, and it exercised its option to terminate the contract. However, on August 1, the parties signed an "Agreement to Reinstate Vacant Land Offer to Purchase," which stated that "the parties desire to reinstate the Offer on its original terms, except as specifically set forth herein[.]" It provided that upon the execution of the agreement by both parties "and the deposit by the Buyer [of] the Extension Fee with the Escrow Agent, the Offer shall be fully reinstated in accordance with its terms[.]"

¶ 12. The reinstatement agreement did not alter the extension dates, the closing date, or the terms of the lease contingency. Thus, until the next extension deadline, Alexander & Bishop retained two options: (1) extend the lease contingency for an additional period of two months, or (2) terminate the contract. Alexander & Bishop did not exercise either one of these options. As a result, the contract became binding on September 20.

¶ 13. On October 9, however, Alexander & Bishop informed Ash Park that its prospective anchor tenant was not interested in immediately leasing the property. The parties discussed amending their agreement, but their negotiations were unsuccessful.

713

¶ 14. Ash Park prepared for the December 14 closing, but the closing did not take place. Shortly thereafter, Ash Park filed a complaint for breach of contract, demanding "judgment from and against the Defendant for specific performance or damages at law, at the election of [Ash Park], in accordance with the terms of the parties' Purchase and Sale Contract."[3]

¶ 15. In response to Ash Park's motion for summary judgment, Alexander & Bishop asserted that there was no breach of contract because the contract had not been reinstated.[4] It acknowledged that specific performance was an available remedy that "rests in the discretion of the court," but it contended that specific performance "only comes into play when damages that could be had at law are an inadequate remedy." Alexander & Bishop argued that Ash Park's damages "are solely economic and are measurable upon sale of the property after [Ash Park] mitigates its damages."

¶ 16. Further, Alexander & Bishop contended that Ash Park had elected the remedy of liquidated damages consisting of $50,000 in earnest money and that such a remedy was adequate. It contended that "[i]t would be inconsistent [for Ash Park] to retain the earnest money and sue for specific performance." Alex-

---

[3] Ash Park also demanded damages arising subsequent to the breach, including "holding costs, taxes, interest, maintenance, commissions, insurance, penalties and opportunity costs, together with statutory costs and disbursements of this action."

[4] Specifically, Alexander & Bishop argued that because it had failed to deposit the $25,000 called for in the reinstatement agreement, the contract had not been reinstated. In addition, it asserted that Ash Park had failed to provide merchantable title and failed to disclose material adverse conditions of the property.

ander & Bishop did not argue that specific performance was impossible because it could not pay the purchase price.

¶ 17. After arguments, the circuit court determined that the contract had been reinstated and that Alexander & Bishop had breached the contract.[5] The court granted summary judgment in favor of Ash Park and ordered the parties to specifically perform the contract. It reasoned that the property was unique, that specific performance was the preferred remedy under Wisconsin law, and that under the terms of the contract the parties had bargained for this remedy:

> This is a unique piece of property. I think specific performance is actually preferred given the citations [to Wisconsin cases involving land transactions]. I agree in most cases or many cases it's not asked for because often the party against who it's attempted to be enforced doesn't have the financial ability or at least known ability to go through with it. . . . [B]ut that doesn't mean specific performance shouldn't be used by the courts just because it's not [used] in certain situations. The parties are entitled to what they contracted for, and they contracted for the purchase of this property.

¶ 18. After this oral decision, Ash Park asked the circuit court to include an award of interest in its order as well as a deadline for performance. Alexander & Bishop objected. On April 9, 2008, the court entered an

---

[5] At the court of appeals, Alexander & Bishop continued to assert that it did not breach the contract. The court affirmed the circuit court's decision. Alexander & Bishop did not include this issue in its petition for review. At oral argument, Alexander & Bishop's counsel confirmed: "For purposes of this appeal before the court, we do not contest that there has been a breach of this contract."

order providing "that plaintiff shall have judgment from and against the defendant for specific performance of the parties' Purchase and Sale Contract dated April 20, 2007, and the parties shall take such actions as are necessary to complete the transaction." The order contained neither an award of interest nor a deadline for performance.

¶ 19. Shortly thereafter, Ash Park filed various motions for the appointment of a receiver and for contempt. It asserted that "[i]t is clear from the correspondence, facts, and arguments made by counsel that Alexander & Bishop has no intention of complying with this Court's Order until they are forced to do so."

¶ 20. Alexander & Bishop countered that Ash Park was not entitled to the appointment of a receiver and that it would be "pointless" because a receiver "would not be able to close any faster than [Alexander & Bishop]. A receiver would not be able to procure financing without an anchor tenant and, therefore, would not be able to carry the judgment into effect."

¶ 21. Further, it argued that contempt proceedings were inappropriate because the order contained no deadline for performance and because Ash Park had not demonstrated that Alexander & Bishop's failure to perform was "intentional." Alexander & Bishop asserted that "no developer can obtain financing for a shopping mall development as planned here, without a signed long-term anchor tenant," and "without a tenant, [Alexander & Bishop] cannot close."[6]

---

[6] After we accepted the petition for review, Ash Park asked this court to require Alexander & Bishop to post a bond pending our decision on the merits of the case. It claimed that during the proceedings in the circuit court, Alexander & Bishop deferred 23 notes receivable totaling more than $12 million. It asserted

¶ 22. On May 22, Alexander & Bishop moved for reconsideration of the judgment for specific performance. In the alternative, it moved for relief from the judgment.[7]

¶ 23. The court heard several motions on May 30, June 27, and July 21. Counsel for Ash Park argued: "The practical problem is that there is no incentive for the defendant to abide by or adhere to this Court's order as current circumstances presently exist" unless the court imposed interest, appointed a receiver, or ordered contempt sanctions. Counsel for Alexander & Bishop agreed that interest might be appropriate, but disagreed about the amount: "I would have to concede that under *Estreen v. Bluhm*[8] there is some authority to impose some incentives [for performing], but I would disagree that the 12 percent money judgment rate applies because this is not a money judgment."

¶ 24. The court determined that it would impose interest, but it was initially undecided about the rate. It explained its reasoning to Alexander & Bishop: "I've got to give some incentive. . . . There has got to be some incentive to get this resolved, and if [Ash Park is] sitting with all the holding costs," there is no incentive for

that Alexander & Bishop was shuffling its assets in order to ensure insolvency and to avoid the order for specific performance. Alexander & Bishop responded that there was no evidence that it attempted to avoid closing on the sale through any fraudulent transfers. Instead, it asserted that it had reclassified the assets in response to an IRS audit.

[7] Alexander & Bishop's motions for reconsideration and relief from judgment were premised on their assertion that Ash Park had failed to reveal relevant facts. The circuit court rejected these arguments, *see infra,* ¶ 25, and the issues raised in the motions are not before this court.

[8] 79 Wis. 2d 142, 255 N.W.2d 473 (1977).

Alexander & Bishop to specifically perform. "[Ash Park has] to believe that, you know, defendant wakes up in the morning with a desire to get this transaction completed and the Court order complied with."

¶ 25. On July 21, the circuit court orally denied Alexander & Bishop's motions for reconsideration and for relief from judgment. The court held the motion for receivership in abeyance as Alexander & Bishop negotiated with a potential tenant: "I'm hesitant to grant [the motion to appoint a receiver], as I indicated in the past, because I think we'll more likely get this matter resolved faster through the efforts of the defendants rather than having a receiver come in."[9]

¶ 26. On July 21, the court ordered interest starting at a rate of 5 percent, which would jump to a rate of 7.5 percent and increase one-half percent each month until the date of closing. The court explained: "Now, I realize that that can't go on forever. And if at some point counsel wants to then get relief from that order, they can file a motion and explain to me that it's been one month or two months or three months and it's become an unreasonable rate."

¶ 27. On August 18, however, the court entered an order stating that it had "reconsidered the issue of appropriate interest rates." It "vacate[d] the oral decision placed upon the record on July 21, 2008," and instead imposed 5 percent prejudgment interest and 12 percent postjudgment interest on the purchase price. Although the circuit court order indicated that Ash

---

[9] Ultimately, Ash Park filed four separate motions for contempt. The record does not reflect whether the circuit court ruled on these motions. However, during oral argument in this court, counsel for Ash Park stated: "Contempt is not before this court. . . . I filed four motions for contempt, and I lost every one of them."

718

Park had referenced Wis. Stat. § 815.05(8) (2007–08)[10] when arguing for the imposition of interest, the circuit court did not cite to any statute as authority when it ordered the interest. The order specified that interest would stop accruing on the date of closing.

¶ 28. The court further explained that "[Alexander & Bishop's] most compelling argument against the imposition of interest was that the plaintiff is still owner of the property and receives the benefits of ownership post-closing date and post-judgment date." Yet, it concluded that there was no beneficial use of the property:

> It appears from all statements made by counsel that . . . the only benefit of holding the property would be appreciation. Since the property is being held without further activity pending defendant's compliance with its contractual obligation, any appreciation of the market value would accrue to the defendant. The plaintiff could rent the land and receive rent proceeds but the type of development in the area does not appear feasible without improvements. It makes no sense for the plaintiff to improve the property pending closing.[11]

---

[10] Wis. Stat. § 815.05(8) provides that "every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year[.]" All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[11] Alexander & Bishop appealed this order on August 25, 2008. On November 7, while the appeal was pending, the circuit court ordered Alexander & Bishop to begin paying interest immediately and to make quarterly payments of postjudgment interest. Alexander & Bishop separately appealed the November 7 order. The court of appeals reversed in an unpublished per curiam dated June 2, 2009, concluding that the circuit court "did not have jurisdiction" to enter the order while the appeal was pending at the court of appeals. *Ash Park, LLC v. Alexander*

¶ 29. On appeal, the court of appeals concluded that the circuit court did not erroneously exercise its discretion by ordering specific performance and interest. *Ash Park, LLC v. Alexander & Bishop, Ltd.,* 2009 WI App 71, ¶¶ 6–11, 317 Wis. 2d 772, 767 N.W.2d 614. Further, it rejected Alexander & Bishop's argument that when specific performance is ordered in favor of a seller, "the actual remedy is an order for judicial sale" and deficiency judgment. *Id.,* ¶ 12.

¶ 30. In its petition for review, Alexander & Bishop presented a single issue: "May a seller of real estate seek both specific performance, as well as interest on the purchase price without a requirement that it mitigate damages?" Alexander & Bishop acknowledged that under Wisconsin law, specific performance is an available remedy for a seller of land after the buyer's breach. Yet, Alexander & Bishop asserted: "This case presents the Court with an opportunity to examine and reshape the analytical framework governing the remedies available to a seller of real estate where the purchaser will not or, as in this case, cannot perform."[12]

## II

¶ 31. Alexander & Bishop's petition for review appeared to recognize that the circuit court had discretion to award specific performance to a seller of real estate under current law, but it asserted that the

*& Bishop, Ltd.,* No. 2009AP62–FT, unpublished slip op. ¶ 6 (Wis. Ct. App. June 2, 2009). Ash Park did not petition for review of that decision.

[12] When we granted the petition for review, we asked the parties to address the procedure that should accompany an order for specific performance by a buyer in a real estate transaction. The parties' arguments and proposals are subsumed in our discussion below.

analytical framework of Wisconsin law should be "reshaped." Nevertheless, in this court, Alexander & Bishop now contends that the circuit court erroneously exercised its discretion by ordering specific performance here. Additionally, it asserts that the court erroneously exercised its discretion by ordering interest at the statutory rate.

¶ 32. The decision to grant or deny the equitable remedy of specific performance is within the discretion of the circuit court. *Anderson v. Onsager,* 155 Wis. 2d 504, 513, 455 N.W.2d 885 (1990). Likewise, in a case of equity, the allowance of interest is a matter within the circuit court's discretion. *Estreen v. Bluhm,* 79 Wis. 2d 142, 156, 255 N.W.2d 473 (1977). A reviewing court will affirm the circuit court's exercise of discretion unless it was erroneous. The circuit court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon the facts of the record. *State v. Fischer,* 2010 WI 61, ¶ 15, 322 Wis. 2d 265, 778 N.W.2d 629.

¶ 33. Whether we should alter Wisconsin jurisprudence presents a question of law. We decide questions of law independently of the determinations rendered by the circuit court and the court of appeals.

¶ 34. We begin by setting forth the several remedies available to a seller of real estate upon the buyer's breach. Then we determine whether the circuit court erroneously exercised its discretion by awarding specific performance. Next, we discuss Alexander & Bishop's proposals for altering the analytical framework governing the remedies available to a seller of real

721

estate. Finally, we determine whether the circuit court erroneously exercised its discretion by ordering interest on the purchase price.

## III. Remedies

¶ 35. When a buyer breaches a contract, several different remedies may be available to the seller. 2 *Contract Law in Wisconsin* §§ 13.1, 13.4 (3d ed. 2007). The seller may seek actual damages, often measured as the difference between the contract price and the value of the property.[13] *Id.*, § 13.6; *see also* 25 Samuel Williston, *A Treatise on the Law of Contracts,* § 66:80 at 8–9 (4th ed. 2002). The seller may select liquidated damages—typically, retention of earnest money. 2 *Contract Law in Wisconsin, supra,* §§ 13.36, 13.62. Finally, the seller may seek specific performance of the contract. *Id.* § 13.53.

¶ 36. Actual damages and liquidated damages are considered damages at law—a legal remedy. By contrast, specific performance is an equitable remedy that seeks to award performance of the contract as specifically agreed. *Id.* § 13.53. The purpose of specific performance is to order the breaching party to do that which it agreed to do in the contract. *Id.*

■■

¶ 37. Here, the parties' contract provided specific performance as one of several remedies Ash Park could

---

[13] The seller may sell the property to a third-party buyer and seek a money judgment for the deficiency against the breaching buyer. Alternatively, the seller may choose to keep the property and seek the difference between the contract price and the fair market value of the property. When a seller seeks damages for breach of contract, the injured party has a duty to use reasonable means to mitigate damages. 2 *Contract Law in Wisconsin* § 13.30 (3d ed. 2007).

seek in the event of Alexander & Bishop's breach.[14] When a contract specifies remedies available for breach of contract, the intention of the parties generally governs. *Moritz v. Broadfoot,* 35 Wis. 2d 343, 347–48, 151 N.W.2d 142 (1967). Additionally, under Wisconsin common law, specific performance is a remedy available to a seller of real estate. *See, e.g., Heins v. Thompson & Flieth Lumber Co.,* 165 Wis. 563, 571, 163 N.W. 173 (1917); *see also Anderson,* 155 Wis. 2d at 511–12 (reaffirming the rule of *Heins*).

■■

¶ 38. The availability of specific performance as a remedy does not mean that the court will automatically grant specific performance upon a seller's request. Rather, as an equitable remedy, an award of specific performance is discretionary. *Anderson,* 155 Wis. 2d at 513. The fairness of ordering specific performance depends on the facts and equities of the individual case before the circuit court and will vary from case to case.[15]

■■

¶ 39. Before ordering specific performance, the court must be satisfied that the claim is fair, just, reasonable, and not the product of an unconscionable or

---

[14] The contract listed actual damages, retention of the earnest money, specific performance, and "any other remedies available in law or equity" as remedies available to the seller.

[15] To the extent that *Heins* implied that a circuit court lacks discretion to determine whether specific performance is an available remedy, this holding was modified by *Anderson:* "We do not interpret *Heins* or any of its progeny to deprive the trial court of discretion in determining whether or not to grant specific performance on a contract for the conveyance of real estate." *Anderson v. Onsager,* 155 Wis. 2d 504, 512, 455 N.W.2d 885 (1990).

oppressive bargain. *Contract Law in Wisconsin, supra,* § 13.61 (citing *McKinnon v. Benedict,* 38 Wis. 2d 607, 619, 157 N.W.2d 665 (1968)); *see also Anderson,* 155 Wis. 2d at 512. Further, impossibility of performance is a defense to specific performance: "[W]here it would be impossible for a party to perform the contract, specific performance will not be granted."[16] *Anderson,* 155 Wis. 2d at 512.

## IV. Circuit Court's Exercise of Discretion

¶ 40. Alexander & Bishop contends that the circuit court erroneously exercised its discretion by failing to "hold an evidentiary hearing to determine whether specific performance was appropriate," either because the seller might be able to sell the property to someone else, or because the buyer could demonstrate that it was unable to close. In essence, this argument charges the circuit court with two discrete errors. First, Alexander & Bishop asserts that the circuit court erred by not requiring Ash Park to demonstrate that it had no adequate remedy at law. Second, it asserts that the circuit court erred by failing to determine whether performance of the contract was "impossible." We address each argument in turn.

### A

■

¶ 41. In some contexts, specific performance is unavailable where legal damages are adequate to remedy the breach. *See, e.g.,* Restatement (Second) of

---

[16] Williston explains that "equity will not decree that the defendant shall do what is clearly beyond its power." 25 Samuel Williston, *A Treatise on the Law of Contracts,* § 67:12 at 223 (4th ed. 2002).

Contracts § 359 (1981); 25 Williston, *supra,* § 67:1 at 184 ("[T]he general rule defining the instances where specific performance will be granted may be stated as follows: where damages are an inadequate remedy and the nature of the contract is such that specific enforcement of it will not be impossible or involve too great practical difficulties . . . equity will grant a decree of specific performance."); *Contract Law in Wisconsin, supra,* § 13.53.; *Welch v. Chippewa Sales Co.,* 252 Wis. 166, 168, 31 N.W.2d 170 (1948).

¶ 42. In the context of contracts for land, however, Wisconsin law does not require a seller to demonstrate the inadequacy of a remedy at law as a prerequisite to an award of specific performance. Wisconsin statutes provide that "specific performance of contract or covenant" is an available remedy for "any person having an interest in real property . . . unless the use of a remedy is denied in a specific situation." Wis. Stat. § 840.03(1)(f).

¶ 43. Further, Wisconsin courts have not restricted a seller's remedy of specific performance to cases in which a remedy at law is inadequate. In *Heins,* the seller of a parcel of land sought specific performance, and this court determined that specific performance was an available remedy. 165 Wis. at 571. Similarly, in *Taft v. Reddy,* 191 Wis. 144, 150, 210 N.W. 364 (1926), this court concluded that "the [land contract] vendor's right to specific performance is established beyond question[.]" *See also Yee v. Giuffre,* 176 Wis. 2d 189, 194 n.3, 499 N.W.2d 926 (Ct. App. 1993). None of these cases requires the seller to demonstrate that a legal remedy would be inadequate.

¶ 44. Alexander & Bishop cites *Henrikson v. Henrikson,* 143 Wis. 314, 127 N.W. 962 (1910), for the

proposition that specific performance is unavailable as a remedy when the buyer breaches a contract to purchase land and there is an adequate remedy at law. *Henrikson* does not support Alexander & Bishop's argument. In that case, there was no valid and enforceable contract to transfer land. Rather, the agreement at issue was an oral contract that did not satisfy the statute of frauds. *Id.* at 317. *Henrikson* does not address the remedies available to a seller when the buyer breaches an enforceable contract for the sale of land.

¶ 45. Wisconsin law is consistent with the general rule across jurisdictions. Courts have traditionally awarded specific performance of a contract for the sale of land without a prerequisite that the non-breaching party demonstrate that legal damages would be inadequate. Restatement (Second) of Contracts § 360 cmt. e (1981) ("Contracts for the sale of land have traditionally been accorded a special place in the law of specific performance. . . . [T]he seller who has not yet conveyed is generally granted specific performance on breach by the buyer."); Edward Yorio, *Contract Enforcement: Specific Performance and Injunctions* 281 (1989) ("Traditionally, when a buyer reneged on a promise to purchase realty, specific performance was almost universally available to remedy the breach.").

¶ 46. Although Ash Park does contend that damages at law would be an inadequate remedy,[17] we need not decide this factual question here. We conclude that the circuit court did not erroneously exercise its discretion by ordering specific performance without requiring Ash Park to demonstrate that a remedy at law would be inadequate.

[17] *See* discussion *infra,* ¶¶ 67–69.

## B

¶ 47. We turn to Alexander & Bishop's second argument that performance of the contract would be impossible. Wisconsin law recognizes impossibility as a defense to specific performance. *Anderson,* 155 Wis. 2d at 512–13. "The defense of impossibility rests on the common-sense principle that a court of equity will not order an impossible act." Yorio, *supra,* § 5.5 at 112.

¶ 48. In its arguments to this court, Alexander & Bishop asserts that it is "impossible" for it to perform the contract: "[T]he anchor tenant never committed which made it impossible for Alexander & Bishop to get financing and close on the deal."

¶ 49. However, Alexander & Bishop never asserted impossibility in the circuit court as a defense to specific performance—either in opposition to Ash Park's motion for summary judgment or in its motion for reconsideration or relief from judgment.[18] Further, in its oral ruling granting specific performance, the circuit court appeared to recognize that the financial inability of a buyer could preclude such an award.[19] Yet, Alexander & Bishop never asked the circuit court to

---

[18] Further, Alexander & Bishop did not assert that the contract was unfair, unjust, or unreasonable, or that performance of the contract would be oppressive. Rather, it asserted that there was no breach of contract and even if there was, Ash Park had elected liquidated damages as a remedy by retaining the earnest money. It contended that it would be "inconsistent" to allow Ash Park to retain the earnest money and also sue for specific performance. *But see Moritz v. Broadfoot,* 35 Wis. 2d 343, 349–50, 151 N.W.2d 142 (1967).

[19] The court stated: "[I]n most cases or many cases [specific performance is] not asked for because often the party against who it's attempted to be enforced doesn't have the financial ability or at least known ability to go through with it[.]"

determine whether it would be "impossible" for Alexander & Bishop to perform.

¶ 50. As a result, the circuit court has not made any factual findings about whether performance would be impossible, and there is no finding of fact for this court to review. "[W]e will not consider factual matters raised for the first time on appeal; our review is confined to the facts in the record before the trial court at the time it decided the motion for summary judgment." *Coopman v. State Farm,* 179 Wis. 2d 548, 556, 508 N.W.2d 610 (Ct. App. 1993); *see also Lind v. Lund,* 266 Wis. 232, 237, 63 N.W.2d 313 (1954).

¶ 51. Alexander & Bishop's assertion that the circuit court should have held a hearing at its own initiative ignores a litigant's responsibility to develop its case in the circuit court and to raise arguments on its own behalf. Here, Alexander & Bishop had the opportunity to raise defenses and to request an evidentiary hearing, but it failed to do so.

¶ 52. It was not until months after the award of specific performance when faced with the possibility of contempt sanctions that Alexander & Bishop first contended that it did not have the financial ability to perform the contract. Alexander & Bishop asserted that "no developer can obtain financing for a shopping mall development as planned here, without a signed long-term anchor tenant." Thus, it argued, contempt sanctions should not be imposed because "without a tenant, [Alexander & Bishop] cannot close."

¶ 53. Even if Alexander & Bishop's assertion that it cannot obtain financing for a shopping mall development without an anchor tenant is true—a question of fact we do not decide on appeal—it does not necessarily

follow that it is impossible for Alexander & Bishop to specifically perform this contract. The order for specific performance does not require Alexander & Bishop to finance and develop a shopping mall, which could indeed require a large investment of capital. Rather, the order requires that it purchase only this parcel of vacant land.

¶ 54. Without making a viable argument identifying how the circuit court erroneously exercised its discretion, Alexander & Bishop essentially asks us to reevaluate the facts and equities in this case. We decline to usurp the equitable function of the circuit court.

¶ 55. We conclude that the circuit court did not erroneously exercise its discretion when it awarded specific performance to Ash Park. The court recognized that specific performance was a remedy that was expressly included in the parties' contract. Further, it recognized that specific performance is also an available remedy under the common law. If later proven, Alexander & Bishop's alleged financial inability to perform may be cause for the circuit court to modify its judgment.[20] However, Alexander & Bishop's bare allegations do not provide a basis for this court to conclude that the circuit court erroneously exercised its discretion.

V. Proposed Changes to Wisconsin Law

¶ 56. Having determined that the circuit court did not erroneously exercise its discretion under current Wisconsin law, we examine next Alexander & Bishop's

[20] Wisconsin statutes provide that a party make seek relief from a judgment or order under some circumstances, including when "[i]t is no longer equitable that the judgment should have prospective application[.]" Wis. Stat. § 806.07(g).

various proposals for changing the law. Alexander & Bishop has urged us to "tweak" current law in one of three ways.

¶ 57. Alexander & Bishop's first proposal asks us to harmonize the law of remedies available to a seller of real estate with the remedies available to a seller of goods by declaring that specific performance may not be ordered when there is an adequate remedy at law. This proposal would preclude a circuit court from ordering specific performance in the first instance unless the court determined that money damages were inadequate.

¶ 58. Alexander & Bishop's second and third proposals would permit the court to order specific performance even without concluding that money damages were inadequate. However, these proposals would alter the administration or enforcement of the remedy of specific performance once ordered. Alexander & Bishop encourages us to adopt a rule requiring a mandatory judicial sale and money judgment for any deficiency once specific performance has been ordered and the buyer cannot or will not pay. In the alternative, it asks us to hold that a seller who is awarded interest in addition to specific performance has a duty to mitigate its damages by attempting to resell the property.

¶ 59. All three proposals would affect the viability and meaningfulness of specific performance as a remedy for sellers of real estate under Wisconsin law. We address each proposal in turn.

A

¶ 60. Alexander & Bishop asserts that we should harmonize the remedies for a buyer's breach of a real estate contract with the remedies available for a buyer's

breach of a contract for goods.[21] Typically, specific performance will not be decreed as a seller's remedy for breach of a contract to sell personal property unless a remedy at law is inadequate. *Welch v. Chippewa Sales Co.*, 252 Wis. 166, 168, 31 N.W.2d 170 (1948).

¶ 61. In support, it offers the Uniform Land Transactions Act, which was drafted in 1975. The uniform act does not recognize the remedy of specific performance for a seller of real estate and does not permit a seller to bring an action for the price under most circumstances.[22]

¶ 62. In the 35 years since it was drafted, no state has adopted the Uniform Land Transactions Act.[23] Ronald Benton Brown, *Whatever Happened to the Uniform Land Transactions Act?*, 20 Nova L. Rev. 1017, 1018 (1996). Furthermore, the uniform act was withdrawn by the National Conference on Uniform State Laws in 1990. *Id.* We are not persuaded that we should alter our longstanding practices by adopting an act that has since been withdrawn by the National Conference on Uniform State Laws.

---

[21] The Uniform Commercial Code, which covers the sale of goods, does not permit specific performance as a seller's remedy when legal damages would be an adequate remedy. Wis. Stat. § 402.716; *see also Welch v. Chippewa Sales Co.*, 252 Wis. 166, 168, 31 N.W.2d 170 (1948).

[22] The comments to the Uniform Land Transactions Act explain that the act "abandons the existing rule under which a seller of a freehold interest is automatically entitled to specific performance. . . . [T]his section gives the seller the right to the price of the real estate only where it is not resaleable at a reasonable price with reasonable effort. The action for the price is not for specific performance and is not an action 'in equity.' " Uniform Land Transactions Act § 2–506 cmt. 1 (1975).

[23] *But see Kuhn v. Spatial Design, Inc.*, 585 A.2d 967, 971 (N.J. Super. 1991); *Lawson v. Menefee,* 132 S.W.3d 890 (Ky. App. 2004).

¶ 63. We conclude that granting or denying specific performance as a remedy is best left to the sound discretion of the circuit court on a case-by-case basis. In exercising its discretion, a circuit court may consider whether a remedy at law would be adequate to remedy a buyer's breach. If the court determines that legal damages are perfectly adequate, the court may in its discretion choose to award damages at law rather than specific performance. Yet, because this decision is best made on the facts and equities of each individual case, we decline to adopt the rule proposed by Alexander & Bishop.

## B

¶ 64. We turn next to Alexander & Bishop's second proposal. It asks us to graft onto the doctrine of specific performance a mandatory procedure for turning an equitable order into a judgment for money by requiring a judicial sale and money judgment for any deficiency.[24] Alexander & Bishop asserts that an order for specific performance should be nothing more than a

---

[24] In addition, Alexander & Bishop asserts that the court should require a redemption period before the judicial sale. It explains that a redemption period would give the buyer the ability to close and obtain the property before it was sold to a third party.

Alexander & Bishop's request for a redemption period is somewhat ironic, given the facts of this case. Although Ash Park urged the circuit court to include a deadline for performance in its order for specific performance, Alexander & Bishop objected to the inclusion of any deadlines. Further, Alexander & Bishop has retained the opportunity to "redeem" the property throughout the pendency of this appeal.

judgment for the purchase price, and that the procedure outlined above would be more equitable for both parties.

■

¶ 65. We decline to adopt Alexander & Bishop's proposal to require this procedure for three reasons. First, the proposal would collapse two distinct remedies —specific performance and actual legal damages—into one, removing for all practical purposes specific performance from the list of available remedies to a seller.

¶ 66. Alexander & Bishop explains that "a monetary judgment would be entered . . . , but the judgment would not be for the full purchase price[.]" Rather, the buyer "would be responsible for the seller's damages, but not more." Yet, if specific performance meant nothing other than a judicial sale and deficiency judgment, it would not differ from a judgment for actual damages.

¶ 67. There may be reasons, however, that a seller might prefer specific performance to actual damages. In this case, for example, Ash Park explained that there is a mortgage on the property and that Ash Park would be required to satisfy the mortgage before it could transfer the title to a third-party purchaser at a judicial sale.

¶ 68. At oral argument, counsel for Ash Park asserted: "If my client sells the property at a judicial sale, he courts financial ruin[.]" He argued that if the property was sold for a sum of money that was less than the existing mortgage, his client would have to make up the difference.

¶ 69. Additionally, a mandatory judicial sale would require the seller to relinquish its interest in the property to a third party before it could pursue a deficiency judgment against the buyer. If the property sold for less than its actual value, the seller would be

deprived of both the property and its fair market value until it could execute its judgment for the deficiency against the breaching buyer. Alexander & Bishop's proposal to collapse actual damages and specific performance into one remedy would make the particular benefits of specific performance unavailable to an innocent seller after the buyer's breach.[25]

¶ 70. The second reason we decline to adopt Alexander & Bishop's proposal is that it would require us to rewrite the parties' contract. Here, the parties' bargain included the remedy of specific performance under the appropriate circumstances. When a contract specifies remedies available in the event of a breach, the intention of the parties generally governs. *Moritz,* 35 Wis. 2d at 348.

¶ 71. Yet, as discussed above, Alexander & Bishop's proposal would collapse the remedies of legal damages and specific performance, resulting in specific performance in name only. It would render meaningless the parties' agreement that specific performance is an available remedy in the appropriate circumstances. We decline to rewrite this contract by reducing the number or availability of bargained-for remedies.

---

[25] The Restatement (Second) of Contracts identifies several additional reasons that a seller might prefer specific performance over legal damages. First, the value of land is to some extent speculative. It may be difficult for a seller to prove with reasonable certainty the difference between the contract price and the market price of the land. Restatement 2d Contracts § 360 cmt. e (1981). Second, the land may not be immediately convertible into money and the seller may be deprived of funds with which the seller could have made other investments. *Id.* Third, the existence of the contract, even if broken by the buyer, operates as a clog on saleability so that it may be difficult to find a purchaser at a fair price. *Id.*

¶ 72. The third reason that we do not accept Alexander & Bishop's proposal to mandate a judicial sale is that a mandatory procedure is antithetical to the concept of equitable relief. In contrast to remedies at law, a defining characteristic of an equitable remedy is that it is flexible and adaptable to the circumstances presented in a particular case.

¶ 73. Pomeroy's *Equity Jurisprudence* explains that "the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." 1 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 109 at 141 (5th ed. 1941). Further, "equitable remedies also differ from the legal ones in the manner of their administration," which should be "natural and flexible." *Id.* § 113 at 150.

¶ 74. Wisconsin cases have recognized that once a court has determined that equitable relief is appropriate, it has wide latitude to fashion the remedy based on the equities of the case. *See Town of Fond du Lac v. City of Fond du Lac,* 22 Wis. 2d 525, 531–32, 126 N.W.2d 206 (1964); *American Medical Servs. Inc. v. Mutual Fed. Savings & Loan,* 52 Wis. 2d 198, 205, 188 N.W.2d 529 (1971) ("The court of equity has always had a traditional power to adapt its remedies to the exigencies and the needs of the case; that was one of the great virtues and reasons for the existence of courts of equity."). Alexander & Bishop's proposal would denude specific performance of the adaptability that allows the circuit court to fashion a remedy to the facts and equities of a particular case.

¶ 75. Alexander & Bishop also contends that a circuit court should refrain from enforcing an order for specific performance through contempt proceedings. It

asserts that contempt sanctions would be inequitable when the required performance involves the payment of money. It argues that the public policy against debtors' prisons militates against contempt as a mechanism of enforcement.

¶ 76. Contempt proceedings are a typical means of enforcing an equitable order for specific performance.[26] *See* Yorio, *supra,* § 4.5.2 at 96 ("Under American law, the ultimate force of an equitable decree derives from the court's ability to punish violations of its order by fines or imprisonment for contempt of court.").

¶ 77. Alexander & Bishop's discussion of debtors' prisons glosses over a key distinction. There is a difference between a buyer who is unwilling to perform and one who is unable. Each is subject to different treatment by a court in equity and under the law of contempt.

¶ 78. A party's unwillingness to obey a court order is the very definition of contempt. Wisconsin Stat. § 785.01(b) defines "contempt of court" as intentional "[d]isobedience, resistance or obstruction of the authority, process or order of a court."

¶ 79. By contrast, inability to perform precludes the imposition of contempt sanctions. *O'Connor v. O'Connor,* 48 Wis. 2d 535, 542, 180 N.W.2d 735 (1970);

---

[26] A leading treatise explains that equitable decrees "are often enforced coercively, through the contempt power. They may also be enforced in other, less drastic ways, however." 3 Dan B. Dobbs, *Law of Remedies* § 2.8 at 186 (2d ed. 1993). For instance, Dobbs explains that equitable orders may under appropriate circumstances be enforced by the appointment of a receiver, *id.* § 2.8(1) at 189–90, by execution, *id.* at 191, or by supplemental proceedings to compel a defendant to reveal assets, *id.* at 191–92.

*see also* 3 Dobbs, *Law of Remedies* § 2.8(7) at 218–19 (2d ed. 1993) (discussing the burden of proof). Just as impossibility is a defense to an order for specific performance, inability to obey that order is a defense to contempt. In *O'Connor*, this court explained that "it has long been settled in Wisconsin that a person cannot be held in contempt of court for the failure to pay money unless the refusal is willful and contemptuous and not the result of his inability to pay." 48 Wis. 2d at 542.

¶ 80. If an equitable court concludes that a buyer subject to an order for specific performance is unable to perform, it would erroneously exercise its discretion by ordering contempt sanctions. In such a case, a judicial sale and deficiency judgment could be an equitable and appropriate procedure.[27]

¶ 81. Here, we emphasize that there is no finding that Alexander & Bishop is unable to perform. Alexander & Bishop never asked the circuit court to order a judicial sale and did not develop a factual record dem-

---

[27] This is what was recognized in *Heins*, where we said a seller's specific performance is "probably, generally enforced by the sale of the land to satisfy the amount due for purchase money and costs, and a judgment for the deficiency, if any, enforceable by execution." *Heins v. Thompson & Flieth Lumber Co.*, 165 Wis. 563, 572, 163 N.W. 173 (1917). When the result of compelling performance would be harsh, we observed that resort to a judicial sale and deficiency judgment "is the better practice . . . especially in absence of some special circumstances showing clearly that such remedies are inadequate to fully protect the vendor's right." *Id.*

Similarly, in the context of an installment contract that was partially performed, the *Kallenbach* court equated an order for specific performance with a judicial sale and deficiency judgment. *Kallenbach v. Lake Publications, Inc.*, 30 Wis. 2d 647, 651, 142 N.W.2d 212 (1966); *see also Taft v. Reddy*, 191 Wis. 144, 210 N.W. 364 (1926).

onstrating why a judicial sale might be an appropriate procedure under the facts of the case. Rather, it asks us to declare that a judicial sale is a mandatory procedure to effectuate an award of specific performance.

¶ 82. For the reasons stated above, we decline to graft onto the equitable remedy of specific performance a mandatory remedy of a judicial sale. It is the circuit court, rather than this court on review, that should make the factual findings, weigh the equities, and exercise its discretion to determine the appropriate procedure for administering and enforcing an order for specific performance.

## C

¶ 83. Finally, Alexander & Bishop asks us to "clarify" that "an important component of specific performance is that the seller must take adequate steps to minimize its damages." It concedes that a requirement to mitigate damages is inconsistent with the remedy of specific performance.[28] *See* Yorio, *supra,* § 8.2.3 at 181. Yet, it asserts that if the seller seeks interest in addition to the equitable remedy of specific performance, the doctrine of mitigation should come into play.

¶ 84. In a situation where specific performance is ordered due to the buyer's breach, however, a duty to mitigate would create several practical difficulties. First, a seller requesting specific performance must be able to demonstrate that it is "ready, willing, and able"

---

[28] At oral argument, counsel for Alexander & Bishop explained: "Mitigation certainly comes into play if you're going to have other types of damages. Mitigation is a damages concept, and if you're going to have other types of damages beyond specific performance, the seller has to seek to mitigate those damages."

to perform the contract by delivering the title to the buyer. *Anderson,* 155 Wis. 2d at 516; 2 *Contract Law in Wisconsin, supra,* § 13.60. The seller cannot be ready, willing, and able to perform the contract after having committed to sell the property to another buyer.

¶ 85. Second, it would be extremely difficult for a seller to market a property to a third-party buyer when that property is subject to a court order for specific performance. Potential third-party buyers might correctly assume that they were walking into a legal minefield, wagering on whether the seller, who is subject to a court order to deliver the title to another buyer, could actually deliver the title.

¶ 86. For these reasons, we decline to impose a duty to mitigate on a seller who requests interest in addition to specific performance.[29]

## VI. Interest

¶ 87. We turn next to the circuit court's award of interest. Alexander & Bishop asserts that the court

---

[29] In the complaint, Ash Park made a claim for consequential damages. *See, supra,* ¶ 14 n.3.

Alexander & Bishop also argues that mitigation should be required when the seller requests damages in addition to an order for specific performance. Some authorities have stated that damages may be appropriate in addition to specific performance to "adjust for the delay in performance between the date specified in the contract and the date on which the equitable decree issues[.]" *See, e.g.,* Edward Yorio, *Contract Enforcement: Specific Performance and Injunctions* § 9.4 at 228 (1989).

Here, the circuit court has not made a determination about the nature and extent, if any, of Ash Park's consequential damages. Accordingly, no issue of mitigation of consequential damages has been presented in this court.

erroneously exercised its discretion by ordering it to pay interest on the purchase price. In *Estreen v. Bluhm,* this court explained that the allowance of interest in a case of equity is dependent upon the various equitable circumstances of the case. 79 Wis. 2d 142, 156, 255 N.W.2d 473 (1977).

¶ 88. When initially deciding that interest would be ordered, the circuit court explained that its intention was to give Alexander & Bishop an incentive to promptly comply with the court's order: "There has got to be some incentive to get this resolved, and if [Ash Park is] sitting with all the holding costs," there is little incentive for Alexander & Bishop to take the necessary steps to close the deal. Motivating the parties to comply with the court's order is a proper consideration when deciding to impose interest.

¶ 89. Alexander & Bishop acknowledges that Wisconsin cases authorize a court to award interest in conjunction with an award of specific performance.[30] Yet, it contends that the circuit court's exercise of discretion was erroneous under the facts of this case. It cites to *Estreen* for the proposition that it is generally "inequitable to permit either party . . . to enjoy both the beneficial use of the property and the use of the purchase money . . . ." 79 Wis. 2d at 156. In essence, Alexander & Bishop contends that Ash Park is obtaining a double recovery because it retained the beneficial use of the property at the same time that interest accrued on the purchase price.

---

[30] In *Buntrock v. Hoffman,* the defendant was a buyer who breached a contract to purchase real estate. 178 Wis. 5, 189 N.W. 572 (1922). This court stated that "it is fair and equitable to charge the defendant with interest" because the seller "was deprived of a proper income on the amount of the purchase price." *Id.* at 18.

¶ 90. The circuit court explicitly considered the argument that awarding interest would violate the court's directive in *Estreen*. However, it concluded that Ash Park had no beneficial use of the property for two reasons. First, it was not feasible for Ash Park to rent the property without making improvements.[31] Second, any appreciation in the property's market value would accrue to Alexander & Bishop, rather than to Ash Park. Alexander & Bishop makes no argument that these findings of fact are clearly erroneous. Based on our review of the record, we conclude that it is not.

¶ 91. Alexander & Bishop also advances that the circuit court erred when it ordered interest at the statutory rate. Wisconsin Stat. § 815.05(8) provides that "every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year[.]"[32] Alexander & Bishop contends that because an order of specific performance is not a judgment for the recovery of money, the circuit court erroneously exercised its discretion by imposing interest at the statutory rate.

¶ 92. We agree with Alexander & Bishop that the order for specific performance is not "a judgment for the recovery of money" and therefore imposition of interest pursuant to Wis. Stat. § 815.05 is inappropriate.[33] Here,

---

[31] During the hearing, the court explained: "If you are buying a $6.3 million on-going hotel, you're right, he's collecting the rents from the hotel. But if he's selling you a piece of vacant land, he doesn't have much income off a piece of vacant land."

[32] In addition to 12 percent postjudgment interest, the circuit court ordered 5 percent prejudgment interest.

[33] We disagree with the court of appeals that this action arguably falls within Wis. Stat. § 815.05(8). *Ash Park*, 317

however, the court ordered interest based upon equitable considerations rather than pursuant to the statute.

¶ 93. The record reveals that the circuit court imposed interest to motivate Alexander & Bishop to perform, to compensate Ash Park for the costs involved in holding the property, and because Ash Park had been deprived of the use of the purchase price. Although Ash Park referenced Wis. Stat. § 815.05(8) when arguing for the imposition of interest, the circuit court did not cite to any statute when it ordered interest. The circuit court recognized that "[b]ecause this was specific performance, I'm not required to give interest at [the statutory rate]."

¶ 94. Further, the circuit court did not erroneously exercise its discretion when it reconsidered the appropriate rate of interest in its order of August 18. The court made clear that the award of interest was based on the equities of the case. It explained, "[M]y goal is to try to get some amount of money which motivates [Alexander & Bishop] to perform." However, the court also recognized that the equities of the case might change as the case evolved.

¶ 95. Originally, Alexander & Bishop represented to the court that the parties were on the verge of closing. As time passed and the parties failed to close, the court was justified in ordering a higher rate of interest to motivate Alexander & Bishop to close. Although the circuit court was not required to set interest at the

Wis. 2d 772, ¶ 27. Nevertheless, we agree that the amount owed to Ash Park is "determinable by a reasonably certain standard of measurement." *See Beacon Bowl v. Wis. Elec. Power Co.,* 176 Wis. 2d 740, 776–77, 501 N.W.2d 788 (1993).

statutory rate, it did not erroneously exercise its discretion by doing so.[34]

## VII

¶ 96. In sum, we conclude that the circuit court did not erroneously exercise its discretion when it ordered specific performance of this contract. The contract provides that specific performance is an available remedy, and neither the contract nor Wisconsin law requires Ash Park to demonstrate that a legal remedy would be inadequate as a precondition to relief. Further, although impossibility is a defense to specific performance, Alexander & Bishop failed to present evidence that performance would be impossible in the proceedings before the circuit court.

¶ 97. Additionally, we decline to alter longstanding Wisconsin law by imposing a requirement that a seller of real estate demonstrate the inadequacy of legal damages as a prerequisite to an order for specific performance. Although a judicial sale and deficiency judgment may be a means of effectuating an award of specific performance, we conclude that this procedure is not mandatory. Rather, it depends on the facts and equities of the case. Because a duty to mitigate is contrary to an award of specific performance and would pose practical difficulties for the non-breaching seller, we decline to require mitigation when a seller asks for interest in addition to specific performance.

¶ 98. Finally, we conclude that the circuit court did not erroneously exercise its discretion by ordering

---

[34] In *Estreen,* for example, this court ordered interest on the purchase price based upon equitable considerations. Because the contract did not provide for a different rate of interest, the court set it at the statutory rate. 79 Wis. 2d at 158.

interest on the purchase price. Accordingly, we affirm the court of appeals and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause remanded to the circuit court.