John N. Kroner, Plaintiff-Appellant-Petitioner,

v.

Oneida Seven Generations Corporation,
Defendant-Respondent.

Supreme Court

*No. 2010AP2533. Oral argument March 7, 2012.
—Decided July 11, 2012.*

2012 WI 88

(Also reported in 819 N.W.2d 264.)

For the plaintiff-appellant-petitioner, there were briefs filed by *Michael F. Brown, Peterson, Berk & Cross, S.C.,* Appleton, and oral argument by *Michael F. Brown.*

For the defendant-respondent, there was a brief filed by *Thomas L. Schober, Davis & Kuelthau, S.C.,* Green Bay, and oral argument by *Thomas L. Schober.*

¶ 1. N. PATRICK CROOKS, J. This case concerns a Brown County Circuit Court's order to transfer to a tribal court a civil suit that was brought against a tribally owned entity by a nonmember of the tribe.[1] The question before us is whether the circuit court erroneously exercised its discretion when it transferred the action to tribal court.[2]

---

[1] The court of appeals affirmed the order. *Kroner v. Oneida Seven Generations Corp.,* No. 2010AP2533, unpublished slip op. (Wis. Ct. App. June 1, 2011).

[2] All seven justices agree to a reversal of the court of appeals and the circuit court and agree that this matter should be remanded to the circuit court.

Though their rationales differ, four justices, Justices Prosser, Roggensack, Ziegler, and Gableman, do not, upon remand, permit transfer of this case to the Oneida Tribal Court, but require the circuit court to proceed on the merits of the pending lawsuit. Justice Prosser has concluded that Wis. Stat. § 801.54 should not be given retroactive effect.

Three justices, Chief Justice Abrahamson and Justices Bradley and Crooks, would remand this matter to the circuit court and direct that the circuit court consider the issue of transfer, applying the § 801.54 factors, resolving questions in regard to concurrent jurisdiction of the circuit court and the tribal court, and also resolving the retroactivity questions in this case surrounding application of the rule.

627

¶ 2. John Kroner, who is not a member of the Oneida Tribe of Indians, had served as chief executive officer of Oneida Seven Generations Corporation (Seven Generations), a tribally owned real estate and holding company, for approximately seven years before he was terminated from his position in 2008. He sued Seven Generations in circuit court, claiming wrongful discharge and breach of contract. The order to transfer that we review here was issued by the Brown County Circuit Court, the Honorable Donald R. Zuidmulder presiding, and deals with the threshold questions regarding which court should hear the case; it does not address the merits of Kroner's claims.

¶ 3. To determine whether the circuit court's granting of the motion to transfer was an erroneous exercise of discretion, we must determine if the circuit court made "an error of law" or "neglect[ed] to base its decision upon the facts of the record." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶ 32, 324 Wis. 2d 703, 783 N.W.2d 294. Where a multi-factor test is required, a court "applie[s] an incomplete, and thus incorrect, standard of law" if it considers only one required factor and "neglect[s] to address any of the other statutory factors." *LeMere v. LeMere*, 2003 WI 67, ¶ 22, 262 Wis. 2d 426, 663 N.W.2d 789. Failure to apply "the proper statutory rigor" constitutes error. *Id.* at ¶ 25.

¶ 4. We acknowledge that the circuit court faced difficult issues without the benefit of any appellate decisions providing guidance concerning the interpretation and application of Wis. Stat. § 801.54 (2009–10)[3], which "authorizes the circuit court, in its discretion, to transfer [an] action to the tribal court' and sets forth the conditions for doing so. Reviewing this case presents

---

[3] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

an opportunity to set forth the analysis and the governing legal principles that we hope will be useful to a circuit court that is considering a motion for discretionary transfer under the statute.[4] The statute states, in part:

---

[4] Wisconsin Stat § 801.54 states, "The circuit court must first make a threshold determination that concurrent jurisdiction exists." Justices Roggensack, Ziegler and Gableman would have circuit courts make the threshold determination that transfer to a tribal court will not "abridge, enlarge or modify the substantive rights of litigants." Justice Roggensack's concurrence, ¶¶ 70, 109. That determination was made in 2008 by the Wisconsin Supreme Court when it passed Wis. Stat. § 801.54 pursuant to Wis. Stat. § 751.12(1), which provides that court-promulgated "rules shall not abridge, enlarge, or modify the substantive rights of any litigant." By virtue of the fact that a majority of this court created the rule, we settled that question. (For a discussion of the statute preceding Wis. Stat. § 751.12, *see In re Constitutionality of Section 251.18, Wis. Statutes,* 204 Wis. 501, 236 N.W. 717 (1931)).

In effect, this court reaffirmed that determination in 2009 and 2010. In 2009, we granted the request of the Wisconsin Department of Children and Families "to create a narrow exception to the rule to facilitate transfer of post-judgment child support cases to tribes under certain circumstances." S. Ct. Order 07–11A, 2009 WI 63, 316 Wis. 2d xiii (issued July 1, 2009, eff. Jan. 1, 2010). In 2010, we reviewed the rule and "the majority of the court concurred that the rule was operating as expected and that no action was required." S. Ct. Order 07–11B, 2011 WI 53, 334 Wis. 2d xv (issued July 1, 2011, eff. Jan. 1, 2012). It is not appropriate to require a circuit court to reexamine a question that this court resolved in 2008, 2009 and 2010.

Of course, as we recognized in publishing but not adopting the comment to Wis. Stat. § 801.54, "the circuit court shall give particular weight to the constitutional rights of the litigants and their rights to assert all available claims and defenses." Supreme Court Note, 2008, Wis. Stat. § 801.54.

Discretionary transfer. When a civil action is brought in the circuit court of any county of this state, and when, under the laws of the United States, a tribal court has concurrent jurisdiction of the matter in controversy, the circuit court may, on its own motion or the motion of any party and after notice and hearing on the record on the issue of the transfer, cause such action to be transferred to the tribal court. The circuit court must first make a threshold determination that concurrent jurisdiction exists.

The statute thus requires a "threshold determination" by the circuit court. It then provides that "in the exercise of its discretion the circuit court shall consider all relevant factors . . . ." It states that the factors a court shall consider include but are "not limited to" a series of facts, such as the tribal membership status of the parties, the timing of the motion to transfer, and the court in which the action can be decided most expeditiously. Wis. Stat. § 801.54(2). The record in this case does not show that the circuit court made the necessary threshold determination and considered "all relevant factors" as required. The circuit court proceeded to the second step without articulating a basis for concurrent jurisdiction. It then focused on one of the factors listed in the statute—the factor related to "[w]hether issues in the action require interpretation of the tribe's laws, including the tribe's constitution, statutes, bylaws, ordinances, resolutions, or case law"—without addressing the other relevant factors.

¶ 5. Where a court has not clearly discussed on the record the basis for a finding of concurrent jurisdiction and also the statutory factors it is required to consider, the record cannot be deemed adequate to support a decision to affirm. Because the facts and the applicable law were not fully stated and considered together in making both the determinations that the

630

statute requires, the order to transfer was an erroneous exercise of the circuit court's discretion. We therefore reverse the court of appeals and remand to the circuit court for reconsideration in light of this opinion. A court that is considering transferring a case to a tribal court under the tribal transfer statute must conduct a two-part analysis. It must make a clear record of its findings and conclusions regarding concurrent jurisdiction, as well as an analysis of all of the rule's relevant factors on the facts presented.

¶ 6. In this case, the court must also make a record of its reasoning and conclusion concerning the separate question of the applicability of Wis. Stat. § 801.54 to this case. That requires applying the principles set forth in *Trinity Petroleum, Inc. v. Scott Oil, Inc.*, 2007 WI 88, ¶ 40, 302 Wis. 2d 299, 735 N.W.2d 1. This court held that the general rule concerning retroactive applicability of procedural rules adopted by the court had certain exceptions. The parties here were ordered by this court to address that question when the petition for review was granted, in light of the fact that the case was pending at the time Wis. Stat. § 801.54 became effective.[5] *Trinity Petroleum* states that the ordinary rule of retroactivity for procedural statutes such as Wis. Stat. § 801.54 does not apply if the rule in question "diminishes a contract, disturbs vested rights, or imposes an unreasonable burden on the party charged with complying with the new rule's requirements." *Id.*, ¶ 7. Because there may be additional facts to be developed before the circuit court that would be

---

[5] Wis. Stat. § 801.54 became effective on January 1, 2009. S. Ct. Order 07–11, 2008 WI 114, 307 Wis. 2d xvii, xxi (issued July 31, 2008, eff. Jan. 1, 2009). Kroner had filed his claim in circuit court in this case in the fall of 2008. The motion to transfer was granted on September 9, 2010.

631

relevant to determining if the exception to retroactivity applies, the parties and the court should address that issue on remand.

¶ 7. Upon remand the circuit court may reach the same conclusion concerning transfer, but only after a thorough process has been followed by the circuit court. A reviewing court will then be in a better position to evaluate any appeal arising from a transfer because the record before it will necessarily contain an explicit determination concerning concurrent jurisdiction, analysis of all relevant factors, and the circuit court's holding on retroactive application.

## I. BACKGROUND

### A. Standard of review

¶ 8. A decision to transfer an action to tribal court pursuant to Wis. Stat. § 801.54, titled "Discretionary transfer of civil actions to tribal court," lies in the circuit court's sound discretion. "A reviewing court will affirm the circuit court's exercise of discretion unless it was erroneous. The circuit court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon the facts of the record." *Ash Park,* 324 Wis. 2d 703, ¶ 32. We have made the following statements about the kind of discretionary rulings we will uphold: "This court will uphold the circuit court's order if the circuit court applies a proper standard of law, examines the relevant facts, and reaches a conclusion that a reasonable court could reach, demonstrating a rational process." *Luckett v. Bodner,* 2009 WI 68, ¶ 31, 318 Wis. 2d 423, 769 N.W.2d 504. "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose

of achieving a reasoned and reasonable determination." *King v. King,* 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999).

## B. Facts and procedural history

¶ 9. John Kroner was terminated from his job as chief executive officer of Seven Generations, a tribally chartered corporate entity that is controlled by the Oneida Business Committee on behalf of the Oneida Tribe of Indians. After his termination, he brought this suit. The first of Kroner's claims is that his termination from his job without cause was a breach of contract. Kroner's second claim is for wrongful discharge in violation of Wisconsin public policy. Both parties support their respective positions with reference to tribal documents. Kroner alleged that his termination without cause violated Seven Generations' stated policies and procedures, which Kroner argued constituted an employment contract. Kroner argued that the Oneida Personnel Policy and Procedure book (also called the "OPPP" or the "Blue Book") as well as the By-laws of Seven Generations, both "indicate cause is required for a worker to be discharged." Seven Generations' position was that a different document, the Oneida Seven Generations Corporation Employee Guidelines, is the document governing the terms of Kroner's employment, and it argues that this document shows that Kroner's employment was at-will and could be terminated without cause.

¶ 10. On October 1, 2008, Seven Generations moved to dismiss for failure to state a claim, arguing that the Blue Book did not apply to Kroner, and that he was an at-will employee. After a hearing on the motion to dismiss, the circuit court suggested that the parties ask the Oneida Tribal Judicial System to accept transfer of the case. In response, the Oneida tribal court sent

a letter, at the circuit court's suggestion, on April 29, 2009, stating that it would accept jurisdiction, but that it would prefer that the case be formally transferred under Wis. Stat. § 801.54. Seven Generations filed a motion to transfer pursuant to Wis. Stat. § 801.54 on August 9, 2010.

¶ 11. At the hearing on the motion to transfer on August 31, 2010, the circuit court granted Seven Generations' motion to transfer the case to the Oneida tribal court. In ordering the transfer, the circuit court rejected Kroner's argument at the motion hearing that the first requirement of the transfer statute was not met because the tribal court did not have concurrent jurisdiction. It can be inferred from the circuit court's response to Kroner's counsel at the hearing that the circuit court concluded that Kroner had essentially acquiesced to the tribe's jurisdiction: "[T]he plaintiff chose to become employed by a wholly owned corporation of the Oneida Nation. He fully knew that it was a corporation incorporated by the Oneida Nation." Mot. Hrg. Tr. 6, Aug. 31, 2010. The circuit court's analysis focused on the documents relied on in support of Kroner's claims. The circuit court concluded that based on the nature of Kroner's claims and the significance given to an employee manual created by the tribe, his claims would be better resolved by the tribe. The circuit court also noted that the case was well developed and would be resolved more expeditiously in tribal court. The court did not explicitly state and address all of the relevant factors in the statute, although it touched on some of those factors in its statements on the record. The court made the following statements at the hearing explaining its conclusion that the tribal court was better equipped to resolve the case expeditiously, and made clear that the ruling was intended to give the plaintiff a forum where his claims

would be adjudicated by those who knew the history and context of the governing documents:

- "[B]ecause part of what the plaintiff was asserting was that there were tribal documents within the Oneida Nation that were material to his client's claim, it was the court's view on that argument partly that this matter should properly be heard by the Oneida Tribal Court assuming they would hear jurisdiction because they would be in a better position to interpret those documents, and hopefully the parties would be better able to determine what has been the past interpretation of those documents by the tribal court, and therefore make arguments to the tribal court with regard to consistency."

- "[T]he plaintiff chose to become employed by a wholly owned corporation of the Oneida Nation. . . . [and] he invokes all the doctrines of the Oneida Nation as a basis upon which he would ask this court to find in his favor."

- "I am well satisfied that the plaintiff himself by the manner in which he has pled this case and the issues that he has engaged provide this court with more than adequate basis to conclude that the proper forum is the Oneida Tribal Court because the plaintiff himself desires to have interpreted rights and rules and regulations of the Oneida Nation."

- "I took time today to thoroughly go through the file and to refresh my memory with regard to the arguments that I've heard."

- "[T]he critical issue that I emphasize on my record, and that is the arguments of the plaintiff and the pleadings of the plaintiff all require this court to interpret Oneida Nation rules, documents, legislation, tribal policies, all of those items."

635

- "[The tribal court is] far better equipped to listen to and thoughtfully consider the arguments made by the plaintiff because it will affect not only the plaintiff but all members of the Oneida Nation and all the employees of the Oneida Nation and everything in the future."

- "[Once the case is in the tribal court] there should be no obstacles or no – nothing put in the way of a resolution of this case whereas I'm satisfied if I were involved in this, I would be having to have – potentially invite testimony from various members of the tribal legislature and others about what the history of this was and who wrote it and what the whole idea of it was, and this is not the forum to do that."

- "It simply needs to be submitted, and as I've said, as I understand the plaintiff's pleadings, ... they're based upon rights that the plaintiff says he has a result of rules and regulations and legislation of the Oneida Tribe."

After Kroner brought a motion for reconsideration, which was denied, he appealed.

¶ 12. The court of appeals affirmed. The court of appeals discussed the appropriateness of the transfer under Wis. Stat. § 809.54, first addressing the question of concurrent jurisdiction, recognizing that the circuit court did not explicitly and directly address the issue. The court of appeals undertook its own analysis of the concurrent jurisdiction question and focused on the significance of two facts: that "Kroner consensually entered into employment with a tribal entity, on tribal lands" and that "Kroner himself asserts that relationship is governed by contract under the tribe's Blue Book." *Kroner v. Oneida Seven Generations Corp.*, No. 2010AP2533, unpublished slip op., ¶ 19 (Wis. Ct. App. June 1, 2011). Those facts were sufficient, it held, to

636

satisfy the first *Montana* exception and to sustain the circuit court's finding of concurrent jurisdiction. *Id.* (citing *Montana v. U.S.*, 450 U.S. 544 (1981)).

¶ 13. The court of appeals then addressed the circuit court's findings as to the statutory factors and held that the record developed was sufficient and that the circuit court did not err in ordering the transfer, even though the court of appeals acknowledged that "the circuit court . . . did not discuss all of the statutory factors that it was required to consider." *Id.*, ¶ 22. It reasoned that the record showed that all the factors "were presented to the circuit court for its consideration" and that the circuit court had stated on the day of the hearing, "I took the time today to thoroughly go through the file and to refresh my memory with regard to the arguments that I've heard." *Id.*, ¶¶ 22–23. The court of appeals said that the circuit court had placed "primary emphasis" on one factor, *id.*, ¶ 24; the court of appeals then reviewed the statutory factors that were not explicitly addressed by the circuit court and considered the remainder of the factors either neutral, irrelevant, or favored transfer. It concluded that "the [circuit] court did consider all of the requisite factors and properly exercised its discretion." *Id.*, ¶ 22. It therefore affirmed. Kroner petitioned this court for review, which we granted.

## C. The history of Wis. Stat. § 801.54

¶ 14. This court adopted Wis. Stat. § 801.54, pursuant to its rulemaking authority.[6] The petition stated,

---

[6] Wis. Stat. § 751.12(1) states,

The state supreme court shall, by rules promulgated by it from time to time, regulate pleading, practice, and procedure in judicial proceedings in all courts, for the purposes of simplifying the same

The State-Tribal Justice Forum has received notice of a number of situations in which Tribal and State Courts are transferring cases in a discretionary manner as justice requires. When considering the potential number of pro se litigants, especially in family matters, a user-friendly discretionary transfer mechanism is strongly supported by all of the State-Tribal Justice Forum in an effort to provide guidance and to let judges know they have the discretion to do so when concurrent jurisdiction exists.

The petition further noted that the Wisconsin Tribal Judges Association, the Committee of Chief Judges, the Wisconsin Joint Legislative Council's Special Committee on State-Tribal Relations, and the Wisconsin State Bar's Indian Law Section had reviewed the proposal. The petition noted that this court had "addressed concurrent jurisdictional issues in civil cases in its *Teague v. Bad River Band of Lake Superior Chippewa Indians* decisions."[7] No. 07–11, *In the matter of the petition to create a rule governing the discretionary transfer of cases to tribal court* (filed July 24, 2008).

and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge, or modify the substantive rights of any litigant. The effective dates for all rules adopted by the court shall be January 1 or July 1. A rule shall not become effective until 60 days after its adoption. . . .

*See also* S. Ct. Order 07–11, 307 Wis. 2d at xviii ("creat[ing] a rule governing the discretionary transfer of cases to tribal court" and citing Wis. Stat. § 751.12(1)).

[7] *Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians (Teague II)*, 2000 WI 79, 236 Wis. 2d 384, 612 N.W.2d 709) and *Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians (Teague III)*, 2003 WI 118, 265 Wis. 2d 64, 665 N.W.2d 899. The factors for determining when transfer is warranted are derived from a listing of factors set forth in the case that is known as *Teague III. Teague III,* 265 Wis. 2d 64, ¶ 71.

¶ 15. The order adopting the rule gives a detailed history of process by which it was adopted. The purpose of the rule was given in a comment that was published with the rule: "The purpose of this rule is to enable circuit courts to transfer civil actions to tribal courts in Wisconsin as efficiently as possible where appropriate." S. Ct. Order 07–11, 2008 WI 114, 307 Wis. 2d xvii, xxii (issued July 31, 2008, eff. Jan. 1, 2009). The director of state courts petitioned this court on behalf of the State-Tribal Justice Forum, a joint committee consisting of circuit court judges, tribal judges, a tribal attorney, a legislative liaison, a district court administrator, and the director of state courts. *Id.* at xviii, n.2. The clerk of the Supreme Court issued letters to 34 organizations and agencies requesting comment on the petition. *Id.* at xviii. The court heard from seven speakers, including representatives Wisconsin courts and tribal courts, at a public hearing held on January 8, 2008. As the order notes, "No individual or representative of any group testified in opposition to the petition." *Id.* at xix. The court discussed the petition in open administrative conference on January 8, 2008, and on April 15, 2008. Between the two conferences, the clerk, at the direction of the court, requested that interested parties submit additional comment on issues that had arisen in the discussion, and further comments were received. *Id.* at xx. On June 25, 2008, the court voted to adopt the petition, as modified through the process in response to the comments and discussion. Justice Roggensack dissented from the adoption of the petition and was joined by Justices Prosser and Ziegler.

## II. DISCUSSION

¶ 16. We now turn to the question of whether the circuit court erroneously exercised its discretion when

it transferred the case to the tribal court. As stated above, "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *King,* 224 Wis. 2d at 248. We first clarify the proper two-step analysis a court must undertake when considering a motion to transfer pursuant to Wis. Stat. § 801.54. Then, we address the exceptions to retroactive application of procedural statutes as discussed in *Trinity Petroleum.*

## A. Concurrent jurisdiction

¶ 17. Where Wis. Stat. § 801.54 applies, the first question for the circuit court to address is whether there is concurrent jurisdiction. Wisconsin Stat. § 801.54 (1) states, "In a civil action where a circuit court and a court or judicial system of a federally recognized American Indian tribe or band in Wisconsin ("tribal court") *have concurrent jurisdiction,* this rule authorizes the circuit court, in its discretion, to transfer the action to the tribal court when transfer is warranted under the factors set forth in sub. (2)." (emphasis added). The statute plainly charges the circuit court with the responsibility of "first mak[ing] the threshold determination that concurrent jurisdiction exists." Wis. Stat. § 801.54(2).

¶ 18. The first step of analysis required by Wis. Stat. § 801.54 is to determine whether there is concurrent jurisdiction because the statute authorizes transfer only where each court has jurisdiction. "The extent to which tribes have civil adjudicative or regulatory jurisdiction over nonmembers is a matter of federal common law." Cohen's Handbook of Federal Indian Law 598 (Nell Jessup Newton et al. eds., 2005) (citing *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians,* 471 U.S.

845, 851–52 (1985)). One commentator has provided the following summary of the Court's jurisprudence on the issue of tribal courts' subject matter jurisdiction thus:

> Unique to Indian law is a doctrine permitting a challenge to jurisdiction in tribal court based on the status of the parties before the tribal court. Even in a case in which the tribe clearly has personal jurisdiction over the defendant, the tribe may not have subject matter jurisdiction over a nonmember under a doctrine announced in *Oliphant v. Suquamish Tribe* [holding that tribal courts lack criminal jurisdiction over non-Indian defendants] and developed in a series of cases narrowing tribal regulatory authority over non-Indians, especially *Montana v. United States*. ... Essentially this line of cases reverses the presumption in favor of tribal court authority over activities taking place within reservations involving nonmembers.... In *Montana* the court announced that the tribes could overcome the presumption against tribal authority in these cases in two circumstances, the now-famous *Montana* exceptions.

Nell Jessup Newton, Tribal Court Praxis: One Year in the Life of Twenty Indian Tribal Courts, 22 Am. Indian L. Rev. 285, 326–27 (1998).

¶ 19. From those cases have come the following general principles to govern jurisdictional questions of this sort. First, the United States Supreme Court has established "the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana,* 450 U.S. at 565 (addressing a tribe's power to regulate non-Indian fishing and hunting on reservation land owned in fee by nonmembers). Second, in that case, it noted two exceptions to that general rule, which have come to be known as "the *Montana* exceptions." In a subsequent case, it briefly described the *Montana* exceptions in this way: "The first exception relates to

nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare." *Strate v. A-1 Contractors,* 520 U.S. 438, 446 (1997) (addressing the tribal court's jurisdiction over the tort claim of a widow of a tribal member against a nonmember arising from an accident on a public road on reservation land). Third, the Court has noted the difference between regulating activities of nonmembers and adjudicating disputes involving nonmembers, and it stated that a tribe cannot adjudicate a case concerning an activity it could not regulate: "As to nonmembers, we hold, a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." *Id.* at 453. That "limitation on jurisdiction" means that there cannot be adjudicative jurisdiction unless "the actions at issue in the litigation are regulable by the tribe." *Nevada v. Hicks,* 533 U.S. 353, 367 n.8 (2001)(addressing a tribal court's jurisdiction over a tort claim arising from a game warden's execution of a search warrant on tribal land). Fourth, where a party seeks to establish tribal court adjudicative jurisdiction over a nonmember that it would not have under the general rule, it bears the burden of showing that at least one of the *Montana* exceptions applies. *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 554 U.S. 316, 330 (2008) (citing *Atkinson Trading Co., Inc. v. Shirley,* 532 U.S. 645, 654 (2001)).

¶ 20. In this case, the parties dispute whether the first *Montana* exception applies to Kroner and thus subjects him to the tribal court's jurisdiction. Stated simply, under the first *Montana* exception, the questions central to the concurrent jurisdiction analysis are whether the nonmember involved entered a "consen-

sual relationship[] with the tribe or its members,"[8] and whether "the actions at issue in the litigation are regulable by the tribe." As a federal court of appeals stated in a case applying *Montana,* "The starting point for the jurisdictional analysis is to examine the specific conduct the Tribe's legal claims would seek to regulate." *Attorney's Process & Investigation Services, Inc. v. Sac & Fox Tribe,* 609 F.3d 927, 936 (8th Cir. 2010).

B. Whether transfer to a tribal court is warranted

¶ 21. If the circuit court finds that concurrent jurisdiction exists, and if there is no stipulation by all parties to a transfer of the case, the next step in the analysis is to determine whether transfer is warranted, considering "all the relevant factors" including those set forth in Wis. Stat. § 801.54. The statute lists the following factors:

---

[8] Personal jurisdiction, as distinct from subject matter jurisdiction, is determined using the due process-based "minimum contacts" test set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945). This due process limitation applies to tribal courts:

> In addition to the *Montana* line of cases limiting the legislative and adjudicative jurisdiction of Indian nations, the Indian Civil Rights Act (ICRA) imposes a statutory version of the due process clause on tribal courts. ... The basic requirement is that a court may not make a binding judgment against an individual with whom the forum has 'no contacts, ties, or relations.' ... It is conceivable, although unlikely, that a tribal court could have subject matter jurisdiction over a case but lack personal jurisdiction over the defendant.

Cohen's Handbook of Federal Indian Law 604–605 (Nell Jessup Newton et al. eds., 2005) (citing possible cases under the second *Montana* exception where a party would lack the necessary minimum contacts). In this case, the claimed jurisdiction is based on the first *Montana* exception, involving a consensual relationship.

643

(a) Whether issues in the action require interpretation of the tribe's laws, including the tribe's constitution, statutes, bylaws, ordinances, resolutions, or case law.

(b) Whether the action involves traditional or cultural matters of the tribe.

(c) Whether the action is one in which the tribe is a party, or whether tribal sovereignty, jurisdiction, or territory is an issue in the action.

(d) The tribal membership status of the parties.

(e) Where the claim arises.

(f) Whether the parties have by contract chosen a forum or the law to be applied in the event of a dispute.

(g) The timing of any motion to transfer, taking into account the parties' and court's expenditure of time and resources, and compliance with any applicable provisions of the circuit court's scheduling orders.

(h) The court in which the action can be decided most expeditiously.

(i) The institutional and administrative interests of each court.

(j) The relative burdens on the parties, including cost, access to and admissibility of evidence, and matters of process, practice, and procedure, including where the action will be heard and decided most promptly.

(k) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

The retroactivity issue itself could be such a factor in determining whether transferring this case to the tribal court would result in the selection of such a place of trial.

¶ 22. The published statute is followed by a comment. The Comment includes the statement, "In considering the factors under sub. (2), the circuit court shall give particular weight to the constitutional rights of the litigants and their rights to assert all available claims and defenses." Supreme Court Note, 2008, Wis. Stat. § 801.54. The comment was not adopted but "may be consulted for guidance in interpreting and applying the statute." *Id.*

¶ 23. Circuit courts are well practiced in applying multi-factor tests and balancing tests to reach legal conclusions in the exercise of their discretion. Such tests are common in widely divergent areas of law as family law, criminal law, and trademark law. *See, e.g., State v. Artic,* 2010 WI 83, ¶ 33, 327 Wis. 2d 392, 768 N.W.2d 430 (six-factor test to determine voluntariness of consent to a warrantless search); *Zellner v. Cedarburg Sch. Dist.,* 2007 WI 53, ¶ 28, 300 Wis. 2d 290, 731 N.W.2d 240 (four-factor "fair use" exception to copyright infringement), and Wis. Stat. § 767.61 (3) (twelve-factor test for alterations to property division at divorce).

¶ 24. Even in a discretionary decision that may be based on multiple factors, however, we have said that "the record must at least reflect the court's consideration of all applicable statutory factors before a reviewing court can conclude that the proper legal standard has been applied . . . ." *LeMere,* 262 Wis. 2d 426, ¶ 25. Where such a test is required, a court "applie[s] an incomplete, and thus incorrect, standard of law" if it considers only one required factor and "neglect[] to address any of the other statutory factors." *Id.* at ¶ 22. Failure to apply "the proper statutory rigor" constitutes error. *Id.* at ¶ 25. When considering statutory factors, however, a court is not "precluded from giving one statutory factor greater weight than another, or from concluding that some

factors may not be applicable at all." *Id.* "[T]he circuit court may summarily conclude that certain of the statutory factors are irrelevant." *Id.* at ¶ 26. Similar principles apply to another common multi-factor discretionary determination, the sentencing decision:

> [A]n abuse of discretion [by a sentencing court] might be found under the following circumstances: (1) Failure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or immaterial to the type of decision to be made; and (3) too much weight given to one factor on the face of other contravening considerations.

*Ocanas v. State,* 70 Wis. 2d 179, 187, 233 N.W.2d 457, 462 (1975). "[S]entencing decisions of the circuit court are generally afforded a strong presumption of reasonability because *the circuit court is best suited to consider the relevant factors* and demeanor of the convicted defendant." *State v. Gallion,* 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197 (emphasis added) (internal citations omitted). It is appropriate to indicate on the record that all the § 801.54 factors have been considered, and specifically to note on the record the relevant factors and the importance each is given. This approach assists the appellate court in its review of the circuit court's exercise of discretion, and is consistent with the cases discussed herein.

### C. Retroactive application of the tribal transfer statute

¶ 25. The above two-step analysis is prescribed by the statute in all cases involving such transfer requests, but in this particular case, there is an additional issue that requires separate consideration.

646

¶ 26. In granting the petition for review for this case, this court ordered that the parties address whether the facts that "the case was pending in Brown County Circuit Court for nearly two years, and was pending at the time Wis. Stat. § 801.54 became effective, have any bearing on the applicability of § 801.54." Kroner has now argued that Wis. Stat. § 801.54 is not the applicable framework under which to analyze this case because it was not in effect at the time his claim was filed and does not apply retroactively.[9] Of course, the effective date does not control the determination of whether a rule applies to a case. As we have stated, "The establishment of effective dates does not determine whether a statute will apply retroactively. All statutes have effective dates." *Trinity Petroleum,* 302 Wis. 2d 299, ¶ 38 (quoting *Salzman v. DNR,* 168 Wis. 2d 523, 530, 484 N.W.2d 337 (Ct. App. 1992)). This case, like *Trinity Petroleum* and *Mosing v. Hagen,*[10] the case the *Trinity Petroleum* court relied on, concerns a statute adopted by this court pursuant to its rulemaking authority under Wis. Stat. § 751.12 (authorizing this court to promulgate rules that "regulate pleading, practice, and procedure in judicial proceedings in all courts, for the purposes of simplifying the same and of promoting the speedy determination of litigation upon its merits"). The question is then whether Wis. Stat. § 801.54 is retroactively applicable to a case such as this, where the

---

[9] As noted previously, Wis. Stat. § 801.54 became effective on January 1, 2009. S. Ct. Order 07–11, 307 Wis. 2d at xxi. Kroner had filed his claim in circuit court in this case in the fall of 2008. The motion to transfer was granted on September 9, 2010.

[10] *Mosing v. Hagen,* 33 Wis. 2d 636, 148 N.W.2d 93 (1967) (holding that a new procedural statute should be applied retroactively because it did not impose an unreasonable burden on the party charged with complying with the procedural requirements and it did not disturb a vested right).

647

case was filed before the rule took effect but where the circuit court ruled on a transfer motion brought after the rule took effect. *Trinity Petroleum* sets forth the governing rule. It makes clear that even for procedural (and therefore presumed retroactive) rules, there are still exceptions where "the new rule diminishes a contract, disturbs vested rights, or imposes an unreasonable burden on the party charged with complying with the new rule." *Id.* As we stated in that case, citing precedent,

> This court's analysis in *Mosing v. Hagen* is particularly instructive in teaching that retroactive application of procedural rules is not absolute. *Mosing* held that a statute (that was adopted by the court through its rulemaking authority pursuant to Wis. Stat. § 751.12) applied retroactively unless it affected a vested or contractual right or imposed an unreasonable burden upon the party attempting to comply with the procedural requirements.

*Trinity Petroleum,* 302 Wis. 2d 299, ¶ 54 (citations omitted).

¶ 27. There is little evidence on this record that would be relevant to this determination. An analysis regarding the rule's effect on any "vested or contractual right" or its imposition of any "unreasonable burden" is needed. Because there are facts that may be relevant to this determination, we remand for the development of the facts and the arguments on this issue and a determination by the circuit court as to the retroactive applicability of the statute.

### D. Application of the principles in this case

¶ 28. The circuit court's ruling in this case did not set forth the facts and the law to support a conclusion that concurrent jurisdiction exists in this case. Rather,

the court appeared to presume that concurrent juris-
diction existed when it stated,

> . . . [T]here has been afoot in this country the acknowl-
> edgement that tribal courts serve a sovereign and I serve
> a sovereign, and if those two sovereigns have an ami-
> cable relationship that they can between the two of them
> work out cases that are more appropriately heard in one
> court versus the other court . . .[,] I believe it requires an
> analysis as to which of those two forums is better
> addressed – is better equipped to address the issues.

The circuit court's reasoning focused then on that
analysis. However, what is required here is an explicit
determination of whether concurrent jurisdiction exists
on the facts of this case and the applicable case law.

¶ 29. The second question for the circuit court to
address is whether, where Wis. Stat. § 801.54 applies and
concurrent jurisdiction exists, the factors set forth in the
statute favor transfer to the tribal court. As the court of
appeals noted, it is not disputed that there were relevant
factors not considered by the circuit court in this case. (It
stated, for example, "The court did not address factor (b),
regarding whether the action involved tribal cultural
matters." *Kroner,* No. 2010AP2533, unpublished slip op.,
¶ 25 (Wis. Ct. App. June 1, 2011). And it supplied its
own analysis of factors (c), (d), (e), (f), (g), (j), and (k),
which the circuit court had not explicitly considered on
the record. *Id.* at ¶¶ 26–31.)

¶ 30. Circuit courts have wide discretion, and
their discretionary rulings will not be lightly disturbed.
However, this record does not show that the "facts of
record and law relied upon are stated and are consid-
ered together" in reaching the conclusion that the
transfer to tribal court was warranted. Nor was there
application of the principles of *Plains Commerce Bank*
or *Montana* to the facts of record to determine whether

649

concurrent jurisdiction, a requisite condition, existed prior to applying the statute. It is true that facts of record that related to some of the factors from Wis. Stat. § 801.54 were cited by the circuit court, which was focused on the evidence on which Kroner was basing his claims. The circuit court centered its analysis of the motion to transfer on the premise that the tribal court was in the best position to rule on a case where much of the evidence offered to support the contract claims would be tribal materials. However, many statutory factors relevant to a transfer decision were not addressed, such as "the timing" of the motion and "matters of process, practice, and procedure."

¶ 31. It is of great assistance for a reviewing court for a circuit court to acknowledge on the record that all the factors have been considered, and specifically note on the record the relevant factors and the importance each is given in making the determination whether to transfer.

## III. CONCLUSION

¶ 32. Where a court has not clearly discussed on the record the basis for a finding of concurrent jurisdiction and also the statutory factors it is required to consider, the record can not be deemed adequate to support a decision to affirm. Because the facts and the applicable law were not fully stated and considered together in making both the determinations that the statute requires, the order to transfer was an erroneous exercise of the circuit court's discretion. We therefore reverse the court of appeals and remand to the circuit court for reconsideration in light of this opinion. A court that is considering transferring a case to a tribal court under the tribal transfer statute must conduct a two-part analysis. It must make a clear record of its findings

and conclusions regarding concurrent jurisdiction, as well as an analysis of all of the rule's relevant factors on the facts presented.

¶ 33. In this case, the court must also make a record of its reasoning and conclusion concerning the separate question of the applicability of Wis. Stat. § 801.54 to this case. That requires applying the principles set forth in *Trinity Petroleum*. This court held that the general rule concerning retroactive applicability of procedural rules adopted by the court had certain exceptions. The parties here were ordered by this court to address that question when the petition for review was granted, in light of the fact that the case was pending at the time Wis. Stat. § 801.54 became effective. *Trinity Petroleum* states that the ordinary rule of retroactivity for procedural statutes such as Wis. Stat. § 801.54 does not apply if the rule in question "diminishes a contract, disturbs vested rights, or imposes an unreasonable burden on the party charged with complying with the new rule's requirements." *Trinity Petroleum,* 302 Wis. 2d 299, ¶ 38. Because there may be additional facts to be developed before the circuit court that would be relevant to determining if the exception to retroactivity applies, the parties and the court should address that issue on remand.

¶ 34. Upon remand the circuit court may reach the same conclusion concerning transfer, but only after a thorough process has been followed by the circuit court. A reviewing court will then be in a better position to evaluate any appeal arising from a transfer, because the record before it will necessarily contain an explicit determination concerning concurrent jurisdiction, analysis of all relevant factors, and the circuit court's holding on retroactive application.

¶ 35. Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this opinion.

*By the Court.*—Reversed and remanded.

¶ 36. DAVID T. PROSSER, J. (*concurring*). Four years ago, the court adopted a rule authorizing Wisconsin courts to transfer civil cases to tribal courts. Wis. Stat. § 801.54. The rule was controversial because it applied to parties who did not consent to the transfers and parties who were not members of the respective tribes.

¶ 37. The history of the rule is summarized in Rule 07–11, *In the matter of the petition to create a rule governing the discretionary transfer of cases to tribal court.* That history discloses some of the court's concerns about substantive legal questions involved in transfers such as:

> 1. Under what circumstances is jurisdiction concurrent between tribal and state courts or exclusive in tribal or state court?
>
> 2. Is there a right under the United States or Wisconsin constitution to have a case heard in state court rather than tribal court?
>
> 3. How does the proposed rule impact the application of Wis. Stat. § 806.245 (full faith and credit)?

But there were many more.

I

¶ 38. The rule was adopted on June 25, 2008, the same day the United States Supreme Court decided *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 554 U.S. 316 (2008). The Court voted to adopt the rule without fully absorbing the import of the *Plains*

652

*Commerce Bank* decision. The vote was 4–3. When the court's order was filed on July 31, 2008, it contained a 16–page dissent written by Justice Roggensack, joined by two other justices.

¶ 39. Justice Roggensack's dissent to the rule raised several legal issues that were not answered by the majority in writing because of the timing and limits of the rulemaking process. Some of these issues have surfaced in the present case but were not briefed.

¶ 40. One of the issues that was not discussed in 2008 was the retroactive application of the rule. The proponents of the rule did not seek application of the rule to cases filed before the rule took effect, and no member of the court advocated that the rule apply to cases filed before the rule took effect.

¶ 41. The court decided that the effective date of the rule would be January 1, 2009. Although court rules take effect on either July 1 or January 1, the court welcomed this six-month delay so that there could be time to draft a lengthy order, permit the writing of a dissent, and give interested parties the opportunity to prepare for the unprecedented new rule. There was no discussion that the rule could be applied to cases that had been pending in Wisconsin courts for months or years, the moment the new rule took effect.

II

¶ 42. In the present case, John Kroner was terminated on May 7, 2008. He filed suit in Brown County Circuit Court on September 10, 2008. Oneida Seven Generations Corporation (OSGC) responded on October 1, 2008, with a motion to dismiss.

¶ 43. Although there was some discussion of transfer during subsequent proceedings, there was no

653

motion by OSGC to transfer the case to tribal court until July 9, 2010.

¶ 44. The circuit court did not order the case transferred to the Oneida Tribal Judicial System until August 31, 2010, ten days short of two years after the case was filed in Brown County Circuit Court.

¶ 45. In my view, the court intended Wis. Stat. § 801.54 to apply prospectively to cases filed on or after January 1, 2009. Prospective application is simple and straightforward, and it avoids—at least for this case— extensive consideration of whether Wis. Stat. § 801.54 may fairly be characterized as a procedural rule; whether its retroactive application would disturb vested rights or impose an unreasonable burden on a litigant; whether the adoption of Wis. Stat. § 801.54 goes beyond pleading, practice, and procedure or abridges, enlarges, or modifies the substantive rights of any litigant; and whether the rule passes constitutional muster for all potential litigants, and for litigant Kroner in the manner applied.

¶ 46. It appears that this court is confronted with a choice between invalidating all or part of the rule or determining that retroactive application of a rule authorizing discretionary transfer to a tribal court over the opposition of a non-tribal member, does not "abridge, enlarge, or modify the substantive rights of any litigant." Wis. Stat. § 751.12(1).

¶ 47. This is not an easy choice.

¶ 48. Although I voted against the adoption of Wis. Stat. § 801.54 in 2008, I freely acknowledge that it appears to be working well and without difficulty in most cases. It is the uncommon cases in which a litigant files suit in circuit court, because he or she prefers not to be in tribal court, that create controversy and produce substantive problems.

654

¶ 49. Applying the rule prospectively would be fair to the litigants and would avoid the kind of decision that will undermine progress in state-tribal relations.

## III

¶ 50. The rule approved by the court contains certain specific qualifications and limitations.

¶ 51. First, "the rule does not apply to any action in which controlling law grants exclusive jurisdiction to either the circuit court or the tribal court." Wis. Stat. § 801.54(1).

¶ 52. Second, a circuit court may not transfer a case to tribal court under the rule unless the tribal court "has concurrent jurisdiction of the matter in controversy." Wis. Stat. § 801.54(2).

¶ 53. Third, the rule is not intended to "alter, diminish, or expand" "the rights" of parties under state or federal law. Wis. Stat. § 801.54(6).

¶ 54. Fourth, the rule is followed by a Comment. The Comment was not adopted by the court but it "may be consulted for guidance in interpreting and applying" the rule. Sup. Ct. Order 07–11, 2008 WI 114, 307 Wis. 2d xvii (issued July 31, 2008, eff. Jan. 1, 2009). The Comment reads:

> *Comment, 2008.* The purpose of this rule is to enable circuit courts to transfer civil actions to tribal courts in Wisconsin as efficiently as possible where appropriate. In considering the factors under sub. (2), *the circuit court shall give particular weight to the constitutional rights of the litigants and their rights to assert all available claims and defenses.*

(Emphasis added.)

¶ 55. These qualifications and limitations reveal several serious problems with the rule. For example, "the circuit court may, on its own motion . . . cause such action to be transferred to the tribal court." Wis. Stat. § 801.54(2). This means that the circuit court may itself *initiate* the transfer process, without a request from any party, and before receiving evidence or legal argument on such vital issues as exclusive jurisdiction, concurrent jurisdiction, the "rights" of the litigants, and all the factors set out in Wis. Stat. § 801.54(2).

¶ 56. It is one thing for a circuit court to decide impartially a party's motion to transfer the case. It is quite another thing for a court to decide multiple issues leading to a transfer, over the opposition of one of the parties, when the court is acting on its own motion.

¶ 57. The party seeking to transfer a case from circuit court to tribal court has the burden of proof on concurrent jurisdiction and other key issues. The rule does not seem to appreciate how a litigant opposed to the transfer will react when the decision on key issues is made by the same judge who initiated the transfer.

¶ 58. It should be noted that cases filed in circuit court can be transferred to "a forum outside this state," Wis. Stat. § 801.63, or removed to a United States District Court, 28 U.S.C. § 1441 (Removal of civil actions). In neither instance, however, does the circuit court *initiate* the transfer. The judge in these situations retains his or her neutrality.

¶ 59. In my view, the judge-initiation provision of the rule should be eliminated.

¶ 60. Another concern flows from the emphasis on a litigant's "rights" in Wis. Stat. § 801.54(6), in the rule's Comment, and in Wis. Stat. § 751.12(1). Section (2) of the rule fails to enumerate, in factors (a)-(k), any required discussion of a litigant's "rights" as a relevant

factor. The failure to enumerate this factor means that it could be overlooked or minimized in the circuit court's decision. This would not be acceptable.

¶ 61. Wisconsin Stat. § 801.63(1) asks the circuit court to find that transfer to a foreign forum "should" be effected "as a matter of substantial justice." That consideration is lacking in this rule.

¶ 62. The factors in § 801.54(2)(a)-(k) are largely derived from *Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians,* 2003 WI 118, ¶ 71, 265 Wis. 2d 64, 665 N.W.2d 899, in the opinion authored by Chief Justice Abrahamson.

¶ 63. Chief Justice Abrahamson's opinion explains the factors as follows:

> [C]ourts and scholars have developed a number of factors to help state and tribal courts determine, in the spirit of cooperation, not competition, which of two courts should proceed to judgment and which court should abstain and cede its jurisdiction. . . . [T]he weight to be given each factor will vary from case to case. [14]
>
> ■■■ I have compiled these factors from a number of sources discussing comity, allocation of jurisdiction, and enforcement of judgments. *See, e.g.,* [Raymond L. Niblock & William C. Plouffe, *Federal Courts, Tribal Courts, and Comity: Developing Tribal Judiciaries and Forum Selection,* 19 U. Ark. Little Rock L. Rev. 219, 237–39 (1997)]; *Tribal/State Protocol for the Judicial Allocation of Jurisdiction Between the Four Chippewa Tribes of Northern Wisconsin and the Tenth Judicial District of Wisconsin* (2001).

¶ 64. These factors are heavily influenced by considerations of comity. But this case and others like it should not be viewed as comity cases where there is no competing case pending in tribal court. This case and others like it should focus on the substantive rights of the litigants.

¶ 65. Assuming without deciding that the Oneida Tribal Judicial System has concurrent jurisdiction in this case, the Brown County Circuit Court is not obligated to transfer the case to tribal court. Focusing on factors like the "court's expenditure of time and resources," § 801.54(2)(g), "[t]he court in which the action can be decided most expeditiously," § 801.54(2)(h), and especially "[t]he institutional and administrative interests of each court," § 801.54(2)(i), diverts attention from the interests of the litigants which should be paramount.

¶ 66. It must be remembered that one of the parties in this case chose to file suit in Brown County Circuit Court and paid a filing fee to accomplish this objective. Transfer deprives the party of that forum.

¶ 67. Finally, under the rule, the party whose case is involuntarily transferred to tribal court must appeal the transfer decision to the court of appeals—and appeal on the issue of transfer. Wis. Stat. § 801.54(4). This will increase the party's costs because the merits of the case will not yet have been decided. Immediate appeal is necessary because once the case goes to tribal court, the party loses the ability to appeal the tribal court's substantive decision to a Wisconsin court. This may be uncorrectable in the rule, but it underscores the significance of a transfer.

¶ 68. In sum, there is room for significant improvement in the transfer rule.

¶ 69. This is not the case to decide all the serious issues implicated in the existing rule. This is the case to determine that the rule should be applied prospectively.

¶ 70. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). This is the first case to come before us based on a nonconsensual transfer of a nontribal member's lawsuit to tribal court pursuant to Wis. Stat. § 801.54.

We are asked to evaluate whether the transfer to tribal court was lawful. I do not join the lead opinion of Justice N. Patrick Crooks, but rather conclude that the transfer to Oneida Tribal Court was not lawful because: (1) § 801.54 was retrospectively applied in violation of John N. Kroner's vested substantive, constitutional rights, including, but not limited to, his right of access to Wisconsin courts granted by Article I, Section 9 of the Wisconsin Constitution; and (2) the supreme court's promulgation of § 801.54, pursuant to the legislative delegation of rule-making authority in Wis. Stat. § 751.12(1), required the circuit court to make a threshold determination that the application of § 801.54 would not abridge, enlarge or modify substantive rights of litigants. Because our rule was not explicit on this point, the circuit court did not have reason to believe it must undertake this threshold determination; therefore, it was not accomplished. Accordingly, given the additional opinions filed in this case today, the court of appeals is reversed, Oneida Seven Generations' motion to transfer to tribal court is denied, and the cause is remanded to the circuit court to proceed on the merits of the pending lawsuit.[1]

## I. BACKGROUND

¶ 71. John Kroner was employed by the Oneida Seven Generations Corporation, which is a real estate development and holding company solely owned by the Oneida Nation. During the course of his employment, Kroner served as the Chief Executive Officer (CEO) for

---

[1] Although our rationales differ, four justices—Justices Prosser, Roggensack, Ziegler, and Gableman—do not, upon remand, permit transfer of this case to the Oneida Tribal Court, but require the circuit court to proceed on the merits of the pending lawsuit.

Seven Generations, both on and off the Oneida Nation's reservation.

¶ 72. Kroner's employment was terminated by Seven Generations on May 7, 2008. On September 10, 2008, Kroner sued Seven Generations in Brown County Circuit Court, claiming breach of his employment contract and wrongful discharge, in violation of public policy.

¶ 73. The Oneida Nation utilizes two documents for employment-related concerns for tribal members: the "Blue Book" and the "By-laws." However, Kroner does not claim that either the Blue Book or the By-laws provides a basis for his claims because he is not a tribal member and he worked for Seven Generations, rather than the Oneida Nation. Kroner asserts that the two Oneida Nation documents are relevant solely as evidence that, as the CEO of Seven Generations, he had the expectation that he would be terminated only for cause, as would tribal members, rather than being an employee-at-will.

¶ 74. Seven Generations counters that its "Guidelines" set the terms and conditions of employment for their employees and that under the Guidelines, Kroner was an employee-at-will.

¶ 75. On April 29, 2009, Oneida Tribal Judge Winnifred L. Thomas wrote the Brown County Circuit Court, saying that the tribal court would accept jurisdiction of the pending case, if the case was transferred subsequent to the effective date of Wis. Stat. § 801.54.[2] On July 8, 2010, almost two years after Kroner commenced the action in Brown County Circuit Court,

_____

[2] The effective date of Wis. Stat. § 801.54 has been inconsistently stated as July 31, 2008, 307 Wis. 2d xvii, and January 1, 2009, 307 Wis. 2d xxi. Given the date of the court's order, the January 1, 2009, date is correct.

Seven Generations moved to transfer the action to Oneida Tribal Court.

¶ 76. Kroner objected to Seven Generation's motion to transfer, claiming that the tribal court did not have jurisdiction over this case. However, on August 31, 2010, the circuit court ordered the transfer of Kroner's lawsuit to the Oneida Tribal Court.

¶ 77. Kroner appealed the transfer; the court of appeals affirmed, and we granted review.

## II. DISCUSSION

### A. Standard of Review

¶ 78. Statutory interpretation is a question of law for our independent review; however, we benefit from the discussions of the court of appeals and the circuit court. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581.

¶ 79. Whether a statute is procedural or has substantive components is a question of law that we independently review, *see Matthies v. Positive Safety Mfg. Co.*, 2001 WI 82, ¶¶ 15, 21, 244 Wis. 2d 720, 628 N.W.2d 842, as is the question of whether a statute is to be applied retrospectively or prospectively, *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 293, 588 N.W.2d 19 (1999).

¶ 80. Additionally, whether the application of Wis. Stat. § 801.54 affects a party's right of access to Wisconsin courts under Article I, Section 9 of the Wisconsin Constitution, and whether § 801.54 affects other substantive rights guaranteed by the United States Constitution and the Wisconsin Constitution are also legal questions for our independent review. *See Wiener v. J.C. Penney Co.*, 65 Wis. 2d 139, 150, 222 N.W.2d 149 (1974).

## B. Retrospective Versus Prospective Application

¶ 81. Whether Wis. Stat. § 801.54 should be applied retrospectively to claims that accrued prior to the effective date of § 801.54 remains a foundational question that was not addressed by the circuit court. As a general rule, statutes are presumed to operate prospectively. *See Schulz v. Ystad,* 155 Wis. 2d 574, 597, 456 N.W.2d 312 (1990). On the other hand, if a statute provides specific direction that it is to be applied to all claims, without regard to when the claim accrued, generally, we would apply it retrospectively. *See id.* at 597–98.

¶ 82. When we consider whether to apply a statute retrospectively or prospectively, we also examine whether the statute is procedural or substantive. *See id.* at 597.

¶ 83. Procedural statutes address methods of enforcing rights or obligations. *Id.* If a statute is purely procedural or remedial in nature, we generally apply it to conduct that occurred before the effective date of the statute. *See Snopek,* 223 Wis. 2d at 294. However, this rule of retrospective application applies only if retrospective application would not impair or disturb vested rights. *See Trinity Petroleum, Inc. v. Scott Oil Co.,* 2007 WI 88, ¶ 40 n.24, 302 Wis. 2d 299, 735 N.W.2d 1 (citing *Gutter v. Seamandel,* 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981)).

¶ 84. In contrast to procedural statutes, substantive statutes are presumed to apply prospectively. *See Snopek,* 223 Wis. 2d at 294. Substantive statutes create, define or regulate rights or obligations. *Betthauser v. Med. Protective Co.,* 172 Wis. 2d 141, 147–48, 493 N.W.2d 40 (1992).

¶ 85. Some statutes that may appear to be procedural have substantive components. For example, in *Schulz,* we examined Wis. Stat. § 767.32(1m) (1989–90),[3] which addressed whether child support orders may be modified. The custodial parents argued that § 767.32(1m) should be applied retrospectively because the statute was remedial or procedural, rather than substantive in nature. *Schulz,* 155 Wis. 2d at 597. They contended it was procedural and remedial because § 767.32(1m) prescribed the method that a circuit court was to employ when revising an order or judgment for child support. *Id.*

¶ 86. However, after a careful analysis of the effect of Wis. Stat. § 767.32(1m), we concluded it was a substantive law, not subject to retrospective application. *Id.* at 597–98. We so concluded because, prior to the enactment of § 767.32(1m), "a child support obligor had a long-standing and well-established right to petition a Wisconsin court for retroactive modification of the amount of child support due under an order or judgment for support," which the court in its discretion could grant. *Id.* at 598. However, because § 767.32(1m) "eliminated a child support obligor's right to petition for retroactive modification of support and thereby redefined his or her obligation with respect to accumulated support arrearages," we concluded that § 767.32(1m) was a substantive law. *Id.*

¶ 87. Kroner commenced this lawsuit in Brown County Circuit Court before the effective date of Wis. Stat. § 801.54; accordingly, Kroner's claim necessarily accrued prior to the effective date of § 801.54. Furthermore, Kroner's lawsuit was pending almost two years

---

[3] All further references to Wis. Stat. § 767.32(1m) are to the 1989–90 version unless otherwise noted.

before Seven Generations moved to transfer the action to Oneida Tribal Court.

¶ 88. Wisconsin Stat. § 801.54 is silent in regard to whether courts should apply the statute retrospectively or prospectively. However, litigants who come within the statutory provisions for subject matter jurisdiction for contract disputes have a statutory right to avail themselves of the Wisconsin court system. *See* Wis. Stat. § 801.05(5)(a) and (b); *see also* § 801.05(1)(d) (recognizing general jurisdiction over defendants "engaged in substantial and not isolated activities within this state").

¶ 89. In addition, it has long been held that Article I, Section 9 of the Wisconsin Constitution provides a right of access to Wisconsin courts.[4] *See New York Life Ins. Co. v. State,* 192 Wis. 404, 412, 211 N.W. 288 (1927) (concluding that Article I, Section 9 "guarantee[s] to every suitor his day in a [Wisconsin] court of competent jurisdiction to which he may present his claim for judicial relief and in which he may either win a victory or suffer a defeat according to the strength or weakness of the case which he presents"); *see also Penterman v. Wis. Elec. Power Co.,* 211 Wis. 2d 458, 474, 565 N.W.2d 521 (1997) ("The right of access to the courts is secured by the First and Fourteenth Amendment[s]. It entitles the individual to a fair opportunity to present his or her claim.").

¶ 90. Article I, Section 9 does not grant litigants the exact remedy they desire, but rather it guarantees access to Wisconsin courts to proceed on rights and

---

[4] Article I, Section 9 of the Wisconsin Constitution provides: "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

remedies created by constitution, statute or common law. *See Doering v. WEA Ins. Group,* 193 Wis. 2d 118, 130–31, 532 N.W.2d 432 (1995). This constitutional right of access to Wisconsin courts is substantive in nature. *See Thomas v. Mallett,* 2005 WI 129, ¶ 122 n.36, 285 Wis. 2d 236, 701 N.W.2d 523. However, the manner in which it is exercised may be affected by statutes that have both procedural and substantive components.

¶ 91. It is not uncommon for statutes to have both procedural and substantive components. For example, in *Finnegan v. Wis. Patients Comp. Fund,* 2003 WI 98, ¶ 31, 263 Wis. 2d 574, 666 N.W.2d 797, we explained that Wis. Stat. § 893.55 had both procedural and substantive components in regard to limitations of medical malpractice actions. A similar circumstance was addressed in our decision in *Schulz,* as explained above.

¶ 92. In Wisconsin courts, civil litigants who bring an action at law have the right to a jury trial, according to Article I, Section 5 of the Wisconsin Constitution, if that right existed at common law at the time of the adoption of the constitution. *Village Food & Liquor Mart v. H&S Petroleum, Inc.,* 2002 WI 92, ¶ 12, 254 Wis. 2d 478, 647 N.W.2d 177. That constitutional provision is affirmed in Wisconsin statutes, which provide that the right to a jury trial "shall be preserved to the parties inviolate" when applicable legislative conditions are met. Wis. Stat. § 805.01.

¶ 93. Although the jury demand and fees payment are procedural mechanisms by which the right to a jury trial is executed, the right to a jury trial is a substantive right. *See State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 523, 261 N.W.2d 434 (1978). Transfer to the Oneida Tribal Court would terminate the substantive right to a jury trial because Oneida Tribal Court does not provide

jury trials.[5] *See* Rules of the Oneida Tribal Judicial System, Judicial Code, Article I (2006).

¶ 94. In addition, Wisconsin courts honor the United States Constitution and the Wisconsin Constitution. *See Dep't of Admin. v. WERC,* 90 Wis. 2d 426, 434–35, 280 N.W.2d 150 (1979). The two constitutions provide the framework in which all Wisconsin courts must operate. *See State v. Cockrell,* 2007 WI App 217, ¶ 34 n.10, 306 Wis. 2d 52, 741 N.W.2d 267. This constitutional framework includes the United States Constitution's Bill of Rights and the Wisconsin Constitution's Declaration of Rights. *Helgeland v. Wis. Municipalities,* 2008 WI 9, ¶ 13, 307 Wis. 2d 1, 745 N.W.2d 1 (explaining that when Wisconsin courts settle disputes brought before them, they must protect the litigants' rights under the Bill of Rights and the Declaration of Rights).

¶ 95. However, as the United States Supreme Court has held, the United States Constitution is not binding on tribal courts. *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 554 U.S. 316, 337 (2008) (citing *Talton v. Mayes,* 163 U.S. 376, 382–83 (1896)). As separate sovereigns antedating the Constitution, Indian tribes have "historically been regarded as unconstrained by those [federal] constitutional provisions framed specifically as limitations on federal or state authority." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56 (1978).

¶ 96. Accordingly, tribal courts are not required to undertake the protection of litigants' rights under the Bill of Rights or the Declaration of Rights. For example, both the Bill of Rights of the United States Constitution

---

[5] The record is not completely clear on whether the issue of a jury trial was determined before the circuit court ordered transfer. However, if Kroner sought a jury trial after transfer to the Oneida Tribal Court, that mode of trial would be unavailable.

and the Wisconsin Constitution guarantee the separation of church and state. U.S. Const. amend. I; Wis. Const. art. I, § 18. Separation of church and state is one of the basic tenets of our democracy; however, separation of church and state is not a tenet of all tribes. Instead, tribal courts may incorporate their religious values as custom and tradition that inform tribal courts' views of the law.[6]

¶ 97. The incorporation of tribal religion into tribal court decisions may reasonably underlie objections from those who have chosen state courts to adjudicate disputes, when removal to tribal court has been sought. For example, in *In the Matter of the Adoption of B.G.J.,* 111 P.3d 651 (Ka. 2005), transfer to tribal court was sought for an adoption proceeding for an Indian child who was subject to the Indian Child Welfare Act (ICWA), whereby transfer was possible under federal law.[7] The child's mother, a tribal member, objected to transfer to tribal court because she did not follow the customs and the traditions of the tribe. For example, she did not practice the Drum Religion, which was practiced by most of the tribe. *Id.* at 654. The state court judge denied the requested transfer, and on appellate review, that exercise of discretion was upheld. *Id.* at 655–59.

---

[6] *See Tribal Courts and the Administration of Justice in Indian Country: Hearing on S. 576 Before the S. Comm. on Indian Affairs,* 110th Cong. 7 (2008) (statement of Roman J. Duran, Vice President, National American Indian Court Judges Association).

[7] The Indian Child Welfare Act (ICWA) is federal legislation addressing the adoption and custody of Indian children. It sets out criteria for tribal intervention and for the transfer of state adoption and custody actions to tribal courts. *See In the Matter of the Adoption of B.G.J.,* 111 P.3d 651, 656 (Ka. 2005); 25 U.S.C. § 1903.

¶ 98. In addition, Wisconsin appellate courts have no power to review the merits of tribal court decisions once a transfer to tribal court occurs because those decisions will be made by the courts of an independent sovereign.[8] Even federal courts cannot review tribal court decisions in the usual course of federal appellate review. *Nevada v. Hicks,* 533 U.S. 353, 385 (2001) (Souter, J., concurring) (explaining that "there is no effective review mechanism in place to police tribal courts' decisions on matters of non-tribal law, since tribal-court judgments based on state or federal law can neither be removed nor appealed to state or federal courts"). Civil cases may be re-examined if a separate declaratory judgment action is brought in federal court that asserts that the tribal court had no subject matter jurisdiction over the claims made. *Id.* at 357. However, because Wisconsin stands on different footing with the Indian tribes than does the federal government, there is no state authority to overturn a tribal court decision, even when that decision is clearly wrong under state law.

¶ 99. This lack of appellate review of tribal court decisions is a significant deprivation of substantive rights for Wisconsin litigants. As Justice Kennedy recognized, "[t]he political freedom guaranteed to citizens by the federal structure is a liberty both distinct from and every bit as important as those freedoms guaranteed by the Bill of Rights." *United States v. Lara,* 541 U.S. 193, 214 (2004) (Kennedy, J., concurring).

¶ 100. By comparison with Justice Kennedy's comments, I conclude that the Wisconsin structure for appellate review is an important substantive right, as set out in the Wisconsin Constitution. *See* art. VII, §§ 3

---

[8] *See also* Wis. Stat. § 806.245 (according judgments of Indian tribal courts in Wisconsin full faith and credit).

and 5. The right of appellate review assures that litigants' rights are thoroughly protected by Wisconsin courts. *See Helgeland,* 307 Wis. 2d 1, ¶ 13. If Kroner's lawsuit were transferred to tribal court, he would lose the right of Wisconsin appellate review of the tribal court decision on the merits of his claim, and therefore, he would be denied a significant substantive right afforded by state law that he held when he filed his lawsuit.

¶ 101. Accordingly, the transfer of Kroner's claims to tribal court would impair his vested substantive right of access to Wisconsin courts, guaranteed by Article I, Section 9 of the Wisconsin Constitution and the general statutory provisions of Wis. Stat. ch. 801. *See New York Life,* 192 Wis. at 412. Such a transfer also would preclude direct appellate review by federal courts, *Hicks,* 533 U.S. at 385, and all review by Wisconsin courts. As Justice Kennedy explained, the right of access to the appellate process is an important freedom, commensurate with those rights set out in the Bill of Rights. *Lara,* 541 U.S. at 214.

¶ 102. Accordingly, Wis. Stat. § 801.54 cannot be applied retrospectively to transfer jurisdiction of Kroner's lawsuit to Oneida Tribal Court because doing so would deprive Kroner of substantive rights that were vested at the time he filed his suit in Brown County Circuit Court, nearly five months before § 801.54 became effective and approximately two years before Seven Generations moved to transfer the case to tribal court.

## C. Rule-Making

¶ 103. Wisconsin Stat. § 801.54 was promulgated by this court's rule-making process. S. Ct. Order 07–11, 2008 WI 114, 307 Wis. 2d xvii (issued July 31, 2008, eff. Jan. 1, 2009) (promulgating Wis. Stat. § 801.54). The rule-making process that we employed is based on a

legislative delegation to the Wisconsin Supreme Court under Wis. Stat. § 751.12(1). Section 751.12(1) provides in relevant part:

> The state supreme court shall, by rules promulgated by it from time to time, regulate pleading, practice, and procedure in judicial proceedings in all courts, for the purposes of simplifying the same and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge, or modify the substantive rights of any litigant.

¶ 104. As Wis. Stat. § 751.12(1) explicitly provides, rules promulgated pursuant to § 751.12(1) "shall not abridge, enlarge, or modify the substantive rights of any litigant." There are good reasons why the legislature specifically limited the court's rule-making authority to procedural rules and prohibited substantive rulemaking under § 751.12(1). One reason is the separate constitutional functions that the legislature and the courts generally provide in Wisconsin's tripartite system of government.

¶ 105. Although the concept of separation of powers is not explicitly stated in the Wisconsin Constitution, the concept is evident in the constitution's structure, as well as the specific provisions generally vesting legislative and judicial powers in separate branches of Wisconsin's government. *See State v. Holmes,* 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1982). As a general rule, the legislative power of the State is vested in the senate and the assembly, Wis. Const. art IV, § 1, while the judicial power is vested in the courts, Wis. Const. art. VII, § 2. This separation of powers grants the courts of this state, and ultimately this court, the constitutional responsibility of interpreting the laws and, most fundamentally, of determining whether the laws pass consti-

tutional muster.[9] *See id.; City of Milwaukee v. Wroten,* 160 Wis. 2d 207, 217, 466 N.W.2d 861 (1991) (recognizing that "questions of constitutionality, like other questions of law, cannot finally be laid to rest until decided by final appellate adjudication").

¶ 106. A very practical problem also may be presented by the "little guy" who has chosen to bring a civil claim in a Wisconsin circuit court, which claim may be subject to a transfer of jurisdiction to tribal court.[10] Whenever a litigant may be subject to transfer to tribal court, the circuit court must make a threshold determination as to whether a transfer would abridge, enlarge or modify the litigant's substantive rights.

¶ 107. Certainly, all seven members of this court should agree that a circuit court must first analyze whether a transfer under Wis. Stat. § 801.54 would abridge, enlarge or modify a substantive right of a litigant. Indeed, in a comment to § 801.54, which "may be consulted for guidance in interpreting and applying the statute," S. Ct. Order 07–11, 307 Wis. 2d at xxii, this court directs that a circuit court, prior to exercising its discretion to transfer, "shall give particular weight to the constitutional rights of the litigants and their rights to assert all available claims and defenses," *id.* at xxiii.

---

[9] Just as the United States Supreme Court is the final arbiter of what passes muster under the United States Constitution, *see Fulton Foundation v. Department of Taxation,* 13 Wis. 2d 1, 14d, 109 N.W.2d 285 (1961), the Wisconsin Supreme Court is the final arbiter of what passes muster under the Wisconsin Constitution, *see State v. Jerrell C.J.,* 2005 WI 105, ¶ 172, 283 Wis. 2d 145, 699 N.W.2d 110 (Roggensack, J., concurring in part, dissenting in part).

[10] Most litigants would have no reason to have had notice or knowledge of the rule-making process by which Wis. Stat. § 801.54 was promulgated.

671

If a litigant's substantive rights would be abridged, enlarged or modified by the application of § 801.54, then a transfer cannot occur absent a proper waiver of those rights on the record. Otherwise, § 801.54 will serve as an unconstitutional mandate, by which a circuit court could require a litigant to submit to the jurisdiction of tribal court without first apprising the litigant of the substantive rights he or she is giving up and without first obtaining the litigant's waiver of those rights. Surely that was not the intention of this court when it promulgated § 801.54. We all agree with the fundamental tenet that a litigant is vested with constitutional rights that he or she cannot be forced to relinquish.[11]

¶ 108. When litigation is conducted in Wisconsin courts, this court expects judges to take great care in assuring that the constitutional and statutory rights of the litigants are protected. Today I reaffirm both constitutional and statutory protections for Wisconsin litigants, and I counsel circuit courts affirmatively to ensure that those protections are not abridged, enlarged or modified by a transfer under Wis. Stat. § 801.54.

## III. CONCLUSION

¶ 109. I conclude that the transfer to Oneida Tribal Court was not lawful because: (1) Wis. Stat. § 801.54 was retrospectively applied in violation of

[11] I do not mean to imply that transfers to tribal court should never be permitted. Certainly, consensual transfers, as well as transfers under ICWA, to tribal courts have occurred numerous times to the satisfaction of all the litigants. There is no question that tribal courts have much to offer. *See Brown Cnty. v. Marcella G.,* 2001 WI App 194, ¶ 2, 247 Wis. 2d 158, 634 N.W.2d 140. My primary concern is that litigants who have chosen to avail themselves of Wisconsin courts should not be deprived of their substantive rights.

Kroner's vested substantive, constitutional rights, including, but not limited to, his right of access to Wisconsin courts that is granted in Article I, Section 9 of the Wisconsin Constitution; and (2) the supreme court's promulgation of § 801.54, pursuant to the legislative delegation of Wis. Stat. § 751.12(1), required the circuit court to make a threshold determination that the application of § 801.54 would not abridge, enlarge or modify the substantive rights of litigants. Because our rule was not explicit on this point, the circuit court did not have reason to believe it must undertake this threshold determination; therefore, it was not accomplished. Accordingly, given the additional opinions filed in this case today, the court of appeals is reversed, Oneida Seven Generations' motion to transfer to tribal court is denied, and the cause is remanded to the circuit court to proceed on the merits of the pending lawsuit.

¶ 110. I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence.